UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETS

Docket No.: 12-12262GAO

| |
|---|
| FATHER & SON MOVING & STORAGE, MOVING AND STORAGE, INC., d/b/a NEIGHBORS MOVING AND STORAGE, AMERICAN VAN LINES, INC., MBM MOVING SYSTEMS, LLC, NATIONWIDE RELOCATION SERVICES, INC., and COLONIAL VAN LINES, INC. <br><br> Plaintiffs, <br><br> v. <br><br> XPRESS MOVERS, LLC, MARTIN PANAYOTOV, STOIL ANDREEV, and ADVANCED INTERACTIVE, LLC, <br><br> Defendants |

**DEFENDANTS' XPRESS MOVERS, LLC's, STOIL ANDREEV's
AND ADVANCED INTERACTIVE, LLC's MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

Now come the defendants, Stoil Andreev, XPress Movers, LLC and Advanced Interactive, LLC, and hereby move for an Order dismissing the plaintiffs' Complaint. As grounds, the defendants state that as alleged operators of an interactive website who were not also the content providers, they are immune from suit pursuant to 47 U.S.C. § 230(c). The only allegation arguably not subject to immunity is a claim that Xpress Movers, LLC, falsely identified itself as accredited by the Better Business Bureau or that MyMovingReviews.com falsely claims to be neutral. Nevertheless, the entire Complaint should be dismissed because it fails to set forth sufficient facts related to those claims that would plausibly entitle the plaintiffs to any relief. The defendants further rely on the arguments made by co-defendant

Martin Panayotov in support of his similar Motion for Judgment on the Pleadings, and incorporate those arguments herein.

I.      Background:

The plaintiffs are four separate companies that are each in the moving business. Defendant Stoil Andreev owns and operates XPress Movers, LLC, a Massachusetts domestic corporation that is also in the moving business. According to the Complaint, Defendant Stoil Andreev and defendant Martin Panayotov both own and operate the website 'MyMovingReviews.com.'[1] Advanced Interactive, LLC is a Massachusetts domestic corporation owned by Stoil Andreev. The complaint alleges that all three moving defendants in some way control MyMovingReviews.com.

MyMovingReviews.com is an interactive website that allows visitors to the site to post comments and reviews of their experiences as consumers of moving company services. The Complaint alleges that the defendants, individually or collectively, manipulated the content of the website MyMovingReviews.com by removing reviews about the plaintiffs' businesses that the plaintiffs characterize as 'positive' while leaving up reviews or comments of the plaintiffs' businesses that they characterize as 'negative.' The plaintiffs further allege that the defendants manipulate the content of the website by deleting 'negative' reviews about XPress Movers, while leaving 'positive' reviews about XPress Movers to remain on the site. As a result, the plaintiffs allege that Xpress Movers, LLC earns a higher 'star' rating on the website, and that some of the plaintiff companies earn a lower 'star' rating. The Complaint must be dismissed because the conduct chiefly complained about falls squarely

---

[1] Mr. Andreev in fact divested his interest in MyMovingReviews.com prior to the date of the allegations in the Complaint. For purposes of this Motion, the allegation that he was operating the website on the dates in question must be accepted as true. Accordingly, Mr. Andreev argues that he is immune from suit as if he were the operator/owner of the website at the time in question, even though he in fact was not.

within the immunity provided by the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c). The ancillary claims of false representation, etc., must also be dismissed because the plaintiffs either lack standing or have failed to identify any actual harm that would entitle them to relief.

II.  The CDA Provides Broad Immunity to the Owners and Operators of Interactive Computer Services like MyMovingReviews.com

The Communications Decency Act, 47 U.S.C. § 230(c), provides in part as follows:

(1) Treatment of Publisher or speaker

No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

(2) Civil liability

No provider or user of an interactive computer service shall be held liable on account of –

(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected.

42 U.S.C. 230(c). An "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the internet and such systems operated or services offered by libraries or educational institutions." Id § 230(f)(2).

Federal courts in general, and the First Circuit Court of Appeals in particular, have held that a website like MyMovingReviews.com falls squarely within the definition of an "interactive computer service" as Congress intended that term in the CDA. Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 419 (1st Cir. 2007)("[W]eb site operators . .

3

. are providers of interactive computer services" because "[a] web site . . . enables computer access by multiple users to a computer server, namely, the server that hosts the web site." (internal quotation marks omitted)); <u>Nemet Chevrolet, Ltd., v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 255 (4th Cir. 2009)(website that allows computer users to post reviews of businesses and products on it held to be a interactive computer service), <u>Fair Hous. Council of San Fernando Valley v. Roommates.com</u>, LLC, 521 F.3d 1157, 1162 n. 6 ("Today, the most common interactive computer services are websites.").

As the Complaint makes clear at the outset, the various theories of liability asserted against the defendants all arise from the defendants' "operation of the website MyMovingReviews.com." Complaint, ¶ 1. MyMovingReviews.com is accurately described in the Complaint as a "consumer review website[.]" Complaint, ¶ 2. It is alleged that the website is "owned and operated by" defendants Stoil Andreev and Martin Panayotov, Complaint, ¶ 2, making them "providers of interactive computer services" pursuant to 42 U.S.C. § 230(c)(1).

The Complaint alleges in Part B, ¶¶ 24 – 28, and Part D, ¶¶ 33 – 43, that the defendants, in their capacity as operators of the website MyMovingReviews.com, selectively edit incoming content by deleting some reviews and not others. Plaintiffs learned this, they aver, by creating content themselves, including some admittedly 'fake' reviews. Complaint at ¶¶ 36, 37, 39, 41, 42. Nowhere in the Complaint do the plaintiffs aver that any of the *defendants* authored reviews for MyMovingReviews.com. Instead, the thrust of the Complaint is that, as the operators of an interactive website, the defendants cherry pick among the reviews that are submitted by others so that so-called 'good' reviews of the plaintiffs' companies are deleted, and so-called 'bad' reviews are not. Conversely, the

4

defendants allegedly delete the bad reviews of Xpress Movers, LLC but permit the good reviews to remain. Accepting those allegations as true, the CDA provides blanket immunity.

In deciding a motion to dismiss, the Court must accept the facts as alleged in the Complaint. Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005). However, the Court need not credit unsupported conclusions and assertions not adequately supported by factual averments. Palmer v. Champion Mortgage, 465 F.3d 24, 25 (1st Cir. 2006). A defendant challenging the sufficiency of a complaint is entitled to dismissal unless the factual allegations are sufficient to raise a right to relief "above the speculative level[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

47 U.S.C. ¶ 230(c)(1) shields a "provider" or "user" of an "interactive computer service" from liability when either of them publish material provided by a third-party "information content provider." The First Circuit has held that immunity under the statute is applicable if three elements are met: (1) the defendant is alleged to be a provider or user of an interactive computer service; (2) the claim is based on information provided by another information content provider, and; (3) the claim treats the defendant as the publisher or speaker of the information. Universal Commc'n Sys., Inc., 478 F.3d at 418. Recognizing the clear intent of Congress to minimize government regulation of information shared through the internet, the First Circuit has held that, "Section 230 immunity should be broadly construed." Id. at 419. All three elements are met here.

As its name implies, MyMovingReviews.com is an interactive website that permits third parties to post reviews of their moving experiences for public consumption on the internet. The claim is based on how the defendants treat information that is provided by others. Congress knew that interactive web page operators would face a myriad of lawsuits, state and federal, if the content provided by others could be attributed to those operators. The

5

CDA was enacted, in part, as a reaction to a successful suit against an interactive computer service.  See Ascentive, LLC, v. Classic Brands, LLC, 842 F.Supp.2d 450, 472 (2011)(citing the Congressional record).  In Ascentive, the web operators ran a number of sites that, like 'MyMovingReviews.com', allowed third parties to post critical reviews of the complainants' companies – each site had a variant of the phrase 'PissedConsumer' in its web address.  The United States District Court for the Eastern District of New York held that the immunity under Section 230 shielded those owner/operator of consumer review websites from liability for those actions.  Id. at 476 ("no basis on which to find that PissedConsumer is an 'information content provider' ineligible for immunity under the CDA.").

In Universal Communications Systems, Inc., *supra*, the First Circuit upheld the district court's dismissal of a Complaint on grounds of immunity under the CDA.  The plaintiffs in that case were a publicly held company and its CEO.  Id. at 414.  The defendants were Lycos, Inc., its parent company, and a number of John Does who had posted materials on one of Lycos' web pages.  Id. at 415.  The plaintiffs alleged that false and misleading posts on an internet message Board operated by Lycos, Inc., caused them harm.  Id.  But the First Circuit agreed with the district court that Lycos, Inc. was immune from suit because it merely provided the internet forum that allowed others to comment about the plaintiff.  Id.  Because it was not the provider of the objectionable content, Lycos was immune from suit for the comments of others.  Id.

 "The other courts that have addressed these issues have generally interpreted Section 230 immunity broadly, so as to effectuate Congress's 'policy choice . . . not to deter harmful online speech through the  . . . route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages.'  Zeran v. Am Online, Inc.,

129 F.3d 327, 330 – 31 (4th Cir. 1997)." Universal Comm. Systems, Inc. v. Lycos, Inc., 478 F.3d 413, 419 (1st Cir. 2007).

In Zeran, an anonymous person posted a message on an AOL bulletin board selling T-shirts with offensive and tasteless reference to the bombing of the Alfred P. Murrah federal building in Oklahoma City. Id. at 329. Those interested in the T-shirts were instructed to call "Ken" (Mr. Zeran) and the post included Mr. Zeran's phone number. Id. As a result of this 'prank' Mr. Zeran received a number of irate calls, including some death threats. Id. The posts continued for several more days and the calls intensified. Id. Throughout the ordeal, Mr. Zeran made numerous calls to AOL and was told that the account from which the posts were coming would soon be shut off. Id. The fake posting got picked up by a radio station and the announcer encouraged listeners to call the plaintiff with their ire. Id. At one point the plaintiff was getting an abusive call every two minutes. Id. Mr. Zeran brought suit against AOL arguing that it unreasonably delayed in removing the defamatory messages that had been posted by an unidentified third party, that AOL refused to retract the messages, and that AOL failed to screen similar messages going forward. Id. at 328. The district court granted judgment for AOL based on CDA immunity and the Fourth Circuit Court of Appeals affirmed.

The Fourth Circuit reasoned that the purpose of the immunity afforded by the CDA was clear: "to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material." Id. at 331 (quoting 47 U.S.C. § 230(b)(4)). "In line with this purpose, § 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions." Id.

MyMovingReviews.com makes clear on its site that, "[o]ur website is dedicated to providing a means of organizing and displaying material *created by third parties*. Our Web Site's Content includes but is not limited to ratings, comments, discussions, and links to other services. The Content conveyed by the site is the responsibility of the *third party creators*." See MyMovingReviews.com's Terms and Conditions, attached as Exhibit 1 (emphasis added). The CDA was enacted so that web sites like MyMovingReviews.com could exist without fear of liability related to the content that ends up on the site from third parties. The defendants are accused of editing the website's content. See Complaint ¶¶ 33 – 43. This is the precise type of conduct that Congress intended to protect. *See* Ben Ezra, Weinstein, and Co., Inc. v. America Online Inc., 206 F.3d 980, 986 (10th Cir. 2000)(defendants who edited editing web content were engaged in conduct that Congress intended to protect in passing the CDA).

III. The Complaint Fails to Set Forth Sufficient Facts to Support a Cause of Action Based on the Allegation that Xpress Movers Falsely Claimed Better Business Bureau Accreditation.

Once the Complaint is stripped away of the allegations to which the defendants are immune – the alleged picking and choosing of reviews – the remaining allegations boil down to these: that Xpress Movers, LLC, falsely claimed Better Business Bureau accreditation, and that MyMovingReviews.com falsely claims to be a 'neutral' website. Complaint at ¶ 46. The Court should dismiss the Complaint in its entirety because the plaintiffs have not plead adequate facts sufficient to "raise a right to relief beyond the speculative level[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

The Lanham Act provides as follows:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container of goods, uses in commerce any word, term, name,

>   symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>   (A)   is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
>   (B)   in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods services, or commercial activities,
>
>   shall be liable in a civil action by any person who believes that he or she is or is likely to be damages by such act.

15 U.S.C. § 1125(a).

In paragraph 46 of the Complaint, plaintiffs invoke part B of § 1125(a)(1) and make six distinct allegations. The first allegation pertains to the alleged misrepresentation by Xpress Movers, LLC, that it was affiliated with the Better Business Bureau because the BBB logo appears on Xpress Movers, LLC's website. The remaining five allegations concern the operations of 'MyMovingReviews.com.' Xpress Movers is entitled to dismissal of the Lanham Act claim over the issue of its BBB accreditation because the plaintiffs have failed to state any facts indicating actual harm resulting from this allegation.

False association claims are specifically set out in part A of the statute that establishes liability for false or misleading representations "as to the affiliation, connection or association of such persons with another person, as to the origin, sponsorship, or approval of his goods or services[.]" Id. at Part A. The Complaint contains no factual allegation that the plaintiffs have suffered any identifiable harm as a result of the allegedly false claim by

9

XPress Movers, LLC that it is BBB accredited.[2]  In order to recover damages, the plaintiffs must allege some actual harm.  Camel Hair & Cashmere Institute, Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 12 (1st Cir. 1986).   Having failed to do so, the plaintiffs' claims under the Lanham Act fail.  By the same token, the claim for violation of M.G.L. c. 93A also fails because that claim too requires some cognizable injury.  Plaintiffs fail to aver a single lost dollar in revenue resulting from any of the conduct described.  A false statement, standing alone and without any resulting harm, is not actionable under c. 93A.  *See* Schanbeck v. Federal-Mogul Corp., 31 Mass. App. Ct. 390 (1991).

       Finally, so much of the Complaint that alleges MyMovingReviews.com is liable for false representations of neutrality must also be dismissed for failure to state a claim.  As set forth at Section C.4. of Martin Panayotov's Memorandum of Law, pp. 24 – 27, when one considers the actual comments on the site about its objective to be neutral, and the various caveats to consumers to do their own homework before hiring any moving company, no reasonable person would be misled into thinking that the website contained material other than the opinions of those who bothered to submit reviews.  Such opinions, by their nature, are not facts.  Two different people using the same moving company and having the exact same experience could easily reach widely differing opinions of the mover.  One customer might be perfectly content to have the movers arrive 15 minutes late, whereas the same delay may cause another customer to be furious. Visitors to a site like MyMovingReviews.com, whose very name signals that it is a review site, expect to see opinions.  The website indicates that the operator strives to make sure that only genuine reviews are posted.  Which helps explain why some 'fake' reviews, concocted by the plaintiffs, were removed from the site.  In any event, none of the plaintiff companies are in the business of operating web sites.

---

[2] Xpress Movers, LLC is in fact BBB accredited.  Its accreditation did lapse briefly but was reinstated.

None are in competition with MyMovingReviews.com. The crux of these allegations go back to the crux of the Complaint – that MyMovingReviews.com edits reviews, allowing some reviews to stay up, but not others. Because the defendants are immune from suit for that conduct, the plaintiffs should not be permitted to end run the immunity statute by dressing up the pleadings with conclusory averments that some unknown and unidentified person or persons thought MyMovingReviews.com was unbiased. Moreover, plaintiffs do not even begin to connect that allegation to any concrete loss or harm to any of them. The defendants are entitled to a dismissal of the Complaint.

IV.     Conclusion

For all of the foregoing reasons, and for those additional reasons advanced by defendant Martin Panayotov in his Motion for Judgment on the Pleadings and accompanying Memorandum of Law, which arguments are incorporated herein by reference, defendants Stoil Andreev, Xpress Movers, LLC and Advanced Interactive, LLC respectfully request that this Honorable Court dismiss the Plaintiffs' Complaint and enter Judgment in their favor.

*Respectfully submitted*,

The Defendants
Xpress Movers, LLC, Stoil Andreev and
Advanced Interactive, LLC
By their attorneys,


  /s/ Peter E. Montgomery
Richard E. Brody, BBO# 058520
Peter E. Montgomery, BBO# 632698
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100
rbrody@bhpklaw.com
pmontgomery@bhpklaw.com

DATED:      May 17, 2013

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

         /s/ Peter E. Montgomery
Peter E. Montgomery, BBO# 632698

DATED:        May 17, 2013