UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FATHER& SON MOVING & STORAGE,
MOVING AND STORAGE, INC., d/b/a
NEIGHBORS MOVING AND STORAGE,
AMERICAN VAN LINES, INC., MBM
MOVING SYSTEMS, LLC, NATIONWIDE
RELOCATION SERVICES, INC., AND
COLONIAL VAN LINES, INC.,
     Plaintiffs

v.

XPRESS MOVERS, LLC, MARTIN
PANAYOTOV, STOIL ANDREEV, and
ADVANCED INTERACTIVE, LLC,
     Defendants.

No. 1:12-cv-12262-GAO

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARTIN PANAYOTOV'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

984810.1

TABLE OF CONTENTS

Table of Authorities………………………………………………………v

I.      INTRODUCTION AND PROCEDURAL BACKGROUND…………………………1

A.     A STRONG PUBLIC POLICY PROTECTING THE FREE FLOW OF INFORMATION BY LIMITING REGULATION AND EXPOSURE TO CIVIL LIABILITY IS EMBODIED IN THE STATUTORY IMMUNITY PROVIDED BY 47 U.S.C. § 230…………………………4

B.     ALLEGATIONS SET FORTH IN PLAINTIFFS' COMPLAINT…………………………8

    1.    Allegations Relating to MyMovingReviews.com………………………………9

    2.    The Plaintiffs' Theories of Liability …………………………………………14

II.     ARGUMENT. ………………………………………………………………...15

A.     STANDARD OF REVIEW FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ………………………………………………………………………...15

B.     SECTION 230 OF THE COMMUNICATIONS DECENCY ACT MANDATES DISMISSAL OF COUNTS I, II, III, IV, AND VI………... ……………………….………… …………16

    1.    The Defendant is a Provider of an Interactive Computer Service…………17

    2.    Counts I, II, III, IV, and VI are Based upon on the Publication of "Information Provided by Another."…… …………………. ………………..17

    3.    Plaintiffs Seek to Hold the Defendant Liable as the Publisher or Speaker of Information or Content Provided by Others…………………………………20

    4.    An Inquiry into the Motives of the Service Provider is Improper in Light of the Nature of the Statutory Immunity………………………………………..22

    5.    The Fact that MyMovingReviews.com Creates Aggregated Ratings Based on Third Party Content Does not Take it Outside of the Section 230 Immunity…………………………………………………………………23

C.     THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR FALSE ADVERTISING OR UNFAIR COMPETITION UNDER THE LANHAM ACT OR STATE COMMON LAW, OR FOR VIOLATION OF M.G.L. CHAPTER 93A (COUNTS I, II, AND III)…………………………………………………………………………24

984810.1

1.      Xpress Movers is Accredited by the Better Business Bureau. ................25

2.      **Plaintiffs' Allegations do not Accurately Reflect Statements and Information Actually Contained on MyMovingReviews.com**................................26

3.      **Plaintiffs' Chapter 93A Claim is Simply a Relabeling of their Unfair Competition Claims**..................................................................................29

D.      THE PLAINTIFFS HAVE NOT PLED THE NECESSARY ELEMENTS OR FACTS THAT WOULD SUPPORT A CLAIM FOR TORTIOUS INTERFERENCE (COUNT IV)...........................31

E.      PLAINTIFFS NEIGHBORS MOVING & STORAGE HAVE FAILED TO STATE A CLAIM FOR TRADEMARK INFRINGEMENT AGAINST THE DEFENDANT (COUNT V)...................32

1.      **Plaintiff Neighbors Moving & Storage Has No Standing to Assert a Claim for Trademark Infringement as it Does not Own the Mark "Neighbors Moving & Storage"**.................................................................................32

2.      **The Facts Alleged Establish that the Use of the Terms "Neighbors Moving & Storage" and "American Van Lines" is Merely to Identify the Companies, and Not as Source Identifiers, and No Claim for Infringement is Stated.** ..........................................................................................33

3.      **The Facts, as Pled, Do Not as a Matter of Law, Support any Inference that there is a Likelihood of Consumer Confusion from the use of Plaintiffs' Company Names on MyMovingReviews.com**......................................34

F.      PLAINTIFF FATHER AND SON FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT BECAUSE IT HAS NOT ALLEGED THAT ITS COPYRIGHT IS FEDERALLY REGISTERED....................................................................................36

G.      THE PLAINTIFFS' CONCLUSORY CONSPIRACY CLAIMS DO NOT CURE THE DEFECTS IN PLEADING THE VARIOUS CAUSES OF ACTION..............................................37

III.    CONCLUSION............................................................................39

984810.1

## EXHIBITS

**EXHIBIT 1** -    Company Detail Printouts, U.S. Department of Transportation Federal Motor Carrier Safety Administration, *available at* http://ai.fmcsa.dot.gov/hhg/search.as

**EXHIBIT 2** –    Create your Moving Company Account, www.mymovingreviews.com/company.php?action=register;

**EXHIBIT 3** –    List Your Moving Company, www.mymovingreviews.com/advertise-moving-company.php

**EXHIBIT 4** -    Senate Committee on Commerce, Science, and Transportation, *Internet Moving Brokers a New Consumer Protection Problem in the Household Goods Moving Industry* (Sept. 19, 2012)

**EXHIBIT 5** –    About MyMovingReviews.com, www.mymovingreviews.com/about/php

**EXHIBIT 6** –    How do I dispute a moving review?, www.mymovingreviews.com/questions/dispute-a-moving-review/

**EXHIBIT 7** –    Terms of Service of MyMovingReviews, www.mymovingreviews.com/terms-of-service.php

**EXHIBIT 8** –    Xpress Movers, LLC BBB Profile, http://www.bbb.org/boston/business-reviews/movers/xpress-movers-llc-in-wilmington-ma-102458/#

**EXHIBIT 9** -    Search Results, United States Copyright Office Public Catalogue, available at http://www.copyright.gov/records/

984810.1

TABLE OF AUTHORITIES

<u>CASES</u>

*Arruda & Beaudoin v. Astrue*, 2013 U.S.Dist.LEXIS 47166 (D. Mass. Mar. 27, 2013)-----------16

*Ascentive, LLC v. Opinions Corp*., 842 F.Supp. 2d 450 (E.D.N.Y. 2011) ------------------------6, 19

*Asia Econ. Inst. v. Xcentric Ventures LLC*, 2011 U.S.Dist.LEXIS 145380 (C.D. Cal. May 4, 2011) --------------------------------------------------------------------------------------------- 6

*Aspinall v. Philip Morris Cos.*, 442 Mass. 381 (2004)--------------------------------------------30

*Bally Total Fitness Holding Corp. v. Faber*, 29 F. Supp. 2d 1161 (C.D. Cal. 1998)--------------36

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (U.S. 2007) -------------------------------------------15

*Blackstone v. Cashman*, 448 Mass. 255 (2007)---------------------------------------------------31

*Camel Hair & Cashmere Institute, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6 (1st Cir. 1986) -----------------------------------------------------------------------------------------------26

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003) ----------------------- 17, 24

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302 (1st Cir. 2002)------------24

*Cavicchi v. Koski*, 67 Mass. App. Ct. 654 (2006) ------------------------------------------------31

*Chervin v. Travelers Ins. Co.*, 448 Mass. 95 (2006) --------------------------------------------30

*Chi. Lawyers' Comm. for Civ. Rights Under the Law, Inc. v. Craigslist, Inc*., 461 F. Supp. 2d 681 (N.D. Ill. 2006) ------------------------------------------------------------------------------ 6

*Cintas Corporation v. Unite Here*, 601 F. Supp. 2d 571 (S.D.N.Y. 2009) ---------------------------34

*Cohen v. Illinois Inst. of Technology,* 524 F.2d 818, 827 (7th Cir. 1975)---------------------------39

*Cortec Indus., Inc.* v. *Sum Holding L.P.,* 949 F.2d 42 (2d Cir. 1991) --------------------------------- 9

*CPC Int'l, Inc. v. Skippy, Inc.*, 214 F.3d 456 (4th Cir. 2000) --------------------------------------36

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979)-----35

*Dear v. Devaney*, 83 Mass. App. Ct. 285 (2013) -------------------------------------------------31

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) (en banc) ------------------------------------------------------------------------- 7, 21, 23

*Famm Steel, Inc. v. Sovereign Bank*, 571 F.3d 93 (1st Cir. 2009) ------------------------------------29

*Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106 (2d Cir. 2010) ---------------------------35

*Gentry v. EBay, Inc.*, 99 Cal. App. 4th 816 (2002)---------------------------------------- 23, 24

*Heinrich ex rel. Heinrich v. Sweet*, 49 F. Supp. 2d 27 (D. Mass. 1999) ------------------------------38

*In re Lane*, 937 F.2d 694 (1st Cir. 1991)------------------------------------------------- 15, 27

*Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28 (1st Cir. 2008) -----------------------------------29

*JSB Indus. v. Nexus Payroll Servs., Inc.*, 463 F. Supp. 2d 103 (D. Mass. 2006)--------------------29

*Kadar Corp. v. Milbury*, 549 F.2d 230 (1st Cir. 1977) -------------------------------------------39

*Kurker v. Hill*, 44 Mass. App. Ct. 184 (1998)----------------------------------------------- 31, 38

*L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26 (1st Cir. 1987)-------------------------------36

*Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005)---------------------------------------------36

*Latin Am. Music Co. v. Media Power Group, Inc.*, 705 F.3d 34 (1st Cir. 2013)-------------------37

*Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 396 N.E.2d 149 (1979)----------------30

*Levitt v. Yelp! Inc.*, No. C-10-1321, 2011 U.S.Dist. LEXIS 124082 (N.D.Cal. Oct. 26, 2011)--- 7, 21, 24

*Lyons v. Gillette*, 882 F. Supp. 2d 217 (D. Mass. 2012)------------------------------------------32

984810.1

*Massachusetts Laborers' Health & Welfare Fund, by and Through its Trustees v. Philip Morris, Inc.*, 62 F. Supp. 2d 236 (D. Mass. 1999)------------------------------------------------------15
*Massachusetts Sch. of Law v. ABA*, 142 F.3d 26 (1st Cir. 1998) ---------------------------- 29, 30
*Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204 (D. Mass. 2000) ----------------- 16
*Palmer v. Champion Mortgage*, 465 F.3d 24  (1st Cir. 2006) --------------------------------------16
*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241 (3d Cir. 2011) -------------------29
*Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005) -----------------------------------------15
*Schwanbeck v. Federal-Mogul Corp.*, 31 Mass. App. Ct. 390 (1991)--------------------------------30
*Shaw v. Digital Equip. Corp.*, 82 F.3d 1194 (1st Cir. 1996)--------------------------------------15
*Slotnick v. Staviskey*, 560 F. 2d 31 (1st Cir. 1977) --------------------------------------------39
*Stratton Oakmont v. Prodigy Servs. Co.*, 1995 N.Y. Misc. LEXIS 229, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995)----------------------------------------------------------------------- 6
*Taubman Co. v. Webfeats*, 319 F.3d 770 (6th Cir. 2003)--------------------------------------------36
*Taylor Building Corp. of Am. v. Benfield*, 507 F. Supp. 2d 832 (S.D. Ohio 2007) -----------------36
*TriMark USA, Inc. v. Performance Food Group Co., LLC*, 667 F. Supp. 2d 155 (D. Mass. 2009) ------------------------------------------------------------------------------------35
*United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*, 128 F.3d 86 (2d Cir. 1997) ------34
*Universal Communication Systems, Inc. v. Lycos, Inc.*, 478 F.3d 415 (1st Cir. 2007)------------- 6
*Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56 (1st Cir. 2008) --------------------32
*Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993) --------------------------------------------------- 9
*Weber v. Community Teamwork, Inc.*, 434 Mass. 761 (2001) -------------------------------------31
*Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F.Supp. 267 (S.D.NY 1992) -------------------33
*Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) --------------------------------------- 5

<u>STATUTES</u>

15 U.S.C. § 1114 ----------------------------------------------------------------------------------32
15 U.S.C. § 1125(a) -------------------------------------------------------------------------------24
17 U.S.C. § 411-----------------------------------------------------------------------------------37

<u>OTHER AUTHORITIES</u>

Jeff Kosseff, *Defending Section 230: The Value of Intermediary Immunity*, 15 J. Tech. L. & Pol'y 123, 128 (Dec. 2010) ----------------------------------------------------------------------------- 4

<u>TREATISES</u>

Restatement (Second) Torts, § 876 -------------------------------------------------------------38
Restatement (Third) of Unfair Competition, § 2-----------------------------------------------24

Defendant Martin Panayotov ("Panayotov" or "the defendant") respectfully submits this memorandum of law in support of his motion to dismiss the plaintiffs' First Amended Complaint for failure to state a claim on which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## I.      INTRODUCTION AND PROCEDURAL BACKGROUND

The six named plaintiffs have brought this lawsuit for the purpose of chilling or quashing online consumer speech that is critical of their businesses. A proper application of the Rule 12(b)(6) standard will reveal that, after sweeping aside the rhetoric, conclusory allegations, argument, and mischaracterizations of information contained in exhibits to the First Amended Complaint, the plaintiffs have failed to state a claim on which relief may be granted. Accordingly, the plaintiffs' First Amended Complaint should be dismissed with prejudice.

In the original complaint filed in this action, six plaintiff moving companies or moving brokers[1] asked this Court to treat the defendants as the publishers or speakers of third party content posted on a consumer review website, MyMovingReviews.com (referred to as "MyMovingReviews.com" or "the website"). In its initial formulation, plaintiffs' Complaint asserted that that Panayotov, along with the other defendants, operates a website that allows consumers to post reviews of the plaintiffs' services and the services of other moving companies, including defendant Xpress Movers, LLC ("Xpress Movers"). The plaintiffs further alleged that Panayotov is involved in selecting which reviews are visible to visitors to the website. The plaintiffs did <u>not</u> allege that Panayotov authors any of the reviews posted on the website or alters

---

[1] The plaintiffs characterize themselves, somewhat vaguely, as "provid[ing] moving-related services to consumers." FAC ¶¶ 6-11. It is not clear that they are all separate entities, as at least two, American Van Lines and MBM Moving System, LLC, share a common DOT registration number, #1757726. *See* **Exhibit 1**, Company Detail Printouts, U.S. Department of Transportation Federal Motor Carrier Safety Administration, *available at* http://ai.fmcsa.dot.gov/hhg/search.as. Another of the plaintiffs, Neighbors Moving & Storage, Inc., does not have an active DOT license. *Id.*

content that is submitted by third parties. The plaintiffs merely alleged that the defendant's

exercise of his role as the website publisher or editor is biased against them, and in favor of

Xpress Movers. These allegations brought the case squarely within the federal statutory

immunity provided to internet service providers, such as website operators, pursuant to the

Communications Decency Act ("CDA"), 47 U.S.C. § 230. Under that statute, website operators

are wholly immune from claims relating to the selection and publication of information

submitted by third parties for posting on the site, aside from claims arising under intellectual

property laws. *See* 47 U.S.C. § 230(e)(2).

Panayotov appeared and answered the Complaint on February 12, 2013, and on April 30,

2013, prior to the Rule 16 scheduling conference, filed a motion for judgment on the pleadings,

asserting that the Complaint as a whole was barred by the immunity provided by the CDA, and

that each of the individual claims were subject to dismissal for failure to state a claim. *See*

Docket Entry # 27. The other defendants in this case, Stoil Andreev ("Andreev"), Xpress

Movers, LLC ("Xpress Movers"), and Advanced Interactive, LLC ("Advanced") also filed a

motion for judgment on the pleadings on a similar basis, as the plaintiffs have alleged that all

defendants are operators of the website. Docket Entry # 35.

Prior to opposing either of the motions, the plaintiffs, with the Court's leave, filed a First

Amended Complaint on May 24, 2013. Docket Entry # 37. While an additional defendant and

certain additional allegations were included in the amended pleading, the main thrust of the

lawsuit is still a complaint that the defendant manipulates consumer reviews submitted to

MyMovingReviews.com in a biased fashion. There is still no allegation that Panayotov authored

984810.1

any of the reviews posted on MyMovingReviews.com regarding any of the plaintiff companies.[2] The newly added allegations, relating to the use of the website to generate revenue via the sale of advertisements and sales leads, both legitimate, lawful activities, add nothing to plaintiffs' claims, which are still barred by the CDA.

In an apparent bid to the avoid the reach of the CDA, the plaintiffs have also asserted new claims for trademark infringement and copyright infringement, which would not be barred by the CDA if they stated redressable claims. However, on the facts alleged, the plaintiffs do not assert a "trademark injury" cognizable under the Lanham Act. Moreover, the facts alleged cannot, as a matter of law, give rise to a plausible inference that there is any likelihood of consumer confusion as to any affiliation between the plaintiffs and MyMovingReviews.com, where the plaintiffs' complaint is that the information on that site is critical of their companies. Moreover, the use of the company names is merely for identification purposes, in order to facilitate third party speech which is protected by the First Amendment. In fact, one of the trademarks allegedly infringed—that of Neighbors Moving & Storage—is not even owned by a plaintiff.  *See* FAC Ex. J.

With regard to the copyright infringement claim—asserted solely by Father & Son Moving and Storage—that plaintiff fails to allege that it has registered its claimed work with the United States Copyright Office and therefore lacks standing to sue for its infringement. Moreover, it appears that Father & Sons Moving and Storage is a "Registered Mover" on MyMoving Reviews.com, and therefore either submitted the quoted language, or consented to its use. *See* FAC Ex. K (identifying Father & Sons as a Registered Mover); **Exhibit 2**, Create your Moving Company Account, www.mymovingreviews.com/company.php?action=register;

---

[2] There is a good reason that no such allegation appears: Panayotov does not in fact author the third party content (reviews) complained of.

984810.1

**Exhibit 3**, List Your Moving Company, www.mymovingreviews.com/advertise-moving-company.php.

Notwithstanding the plaintiffs' attempts to plead around the immunity provided by the CDA, their First Amended Complaint fails to state a claim on which relief can be granted, and should be dismissed, with prejudice.

A.      **A STRONG PUBLIC POLICY PROTECTING THE FREE FLOW OF INFORMATION BY LIMITING REGULATION AND EXPOSURE TO CIVIL LIABILITY IS EMBODIED IN THE STATUTORY IMMUNITY PROVIDED BY 47 U.S.C. § 230.**

The United States Congress has expressed a very clear policy of encouraging the free exchange of information online with limited government regulation, while fostering market competition and the development of internet-related technologies, including the development of filtering software intended to detect objectionable content. These policies are expressly set forth in the text of the CDA, 47 U.S.C. § 230[3] ("Section 230"): "[i]t is the policy of the United States to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services," "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation," and to "remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material." 47 U.S.C. § 230(b)(2), (3), (4).

Section 230 is noteworthy for its repeated emphasis on protecting interactive computer service providers, such as Panayotov is alleged to be, not only from liability, but from any and all

---

[3] For a helpful discussion of the circumstances that led to Congress's enactment of the CDA and how it has been applied since 1996, *see* Jeff Kosseff, *Defending Section 230: The Value of Intermediary Immunity*, 15 J. Tech. L. & Pol'y 123, 128 (Dec. 2010).

984810.1

claims arising out of their conduct as service providers. For example, 47 U.S.C. § 230(c)(1)

provides that "[n]o provider or user of an interactive computer service shall be treated as the

publisher or speaker of any information provided by another information content provider."

Similarly, § 230(c)(2)[4] protects both providers and users of an interactive computer services from

liability for "any action voluntarily taken in good faith to restrict access to or availability of

material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively

violent, harassing, or otherwise objectionable." The statute specifically addresses state law

claims as well, providing: "[n]o cause of action may be brought and or liability may be imposed

under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

In one of the earliest cases construing the statute, a 1997 decision that has been followed

and cited with approval by numerous other federal and state appellate and trial courts, the Fourth

Circuit Court of Appeals held that Congress intended that Section 230 provide an immunity to

website operators, based on weighty policy considerations:

> The purpose of this statutory immunity is not difficult to discern. Congress
> recognized the threat that tort-based lawsuits pose to freedom of speech in the
> new and burgeoning Internet medium. The imposition of tort liability on service
> providers for the communications of others represented, for Congress, simply
> another form of intrusive government regulation of speech.

*Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). Noting that—in 1997, over twenty-

five years ago—because there were "millions" of users of the internet, the number of

communications being disseminated by internet service providers was "staggering," and

therefore the "specter of tort liability in an area of such prolific speech would have an obvious

chilling effect." *Id.* at 331. In addition, the court noted that Congress intended that the

---

[4] The defendant does not specifically rely on this subsection, as it is facially inapplicable to the
claims made here, but it is further evidence of Congress's policy of protecting website operators
from civil liability.

protections provided by Section 230 remove the disincentives to self-regulation created by a 1997 New York state court case decision,[5] because that decision exposed computer service providers who took  affirmative steps to attempt to identify and regulate offensive, illegal, or defamatory material to liability as a publisher. *Id.* Removing the disincentives to self-regulation, Congress determined, would foster the development of technologies capable of blocking and filtering objectionable material submitted by third parties.

It is now well-settled that Section 230 is to be broadly applied to "bar a panoply of torts." *Ascentive, LLC v. Opinions Corp.*, 842 F.Supp. 2d 450 (E.D.N.Y. 2011) (quoting *Asia Econ. Inst. v. Xcentric Ventures LLC*, 2011 U.S.Dist.LEXIS 145380, *21-23 (C.D. Cal. May 4, 2011) (collecting cases)). The courts interpreting Section 230 have overwhelmingly held that the statute provides a categorical immunity to internet service providers, including website operators.  *See Universal Communication Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413, 415 (1st Cir. 2007) ("In Section 230 of the Communications Decency Act (CDA), 47 U.S.C. § 230, Congress has granted broad immunity to entities, such as Lycos, that facilitate the speech of others on the Internet"); *see also*, *Chi. Lawyers' Comm. for Civ. Rights Under the Law, Inc. v. Craigslist, Inc.*, 461 F. Supp. 2d 681, 689-690 (N.D. Ill. 2006) (collecting cases). The Ninth Circuit Court of Appeals has explained:

> We must keep firmly in mind that this is an immunity statute we are expounding, a provision enacted to protect websites against the evil of liability for failure to remove offensive content. Websites are complicated enterprises, and there will always be close cases where a clever lawyer could argue that something the website operator did encouraged the illegality. Such close cases, we believe, must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that

---

[5]  *See Stratton Oakmont v. Prodigy Servs. Co.*, 1995 N.Y. Misc. LEXIS 229, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) (holding Prodigy liable for defamatory comments made by an unidentified party on one of its bulletin boards, applying the strict liability standard normally applied to original publishers of defamatory statements).

they promoted or encouraged-or at least tacitly assented to-the illegality of third
parties. Where it is very clear that the website directly participates in developing
the alleged illegality . . . immunity will be lost. But in cases of enhancement by
implication or development by inference ... section 230 must be interpreted to
protect websites not merely from ultimate liability, but from having to fight
costly and protracted legal battles.

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174-75

(9th Cir. 2008) (en banc).

The threat of litigation, or the actual institution of litigation, with its concomitant

expenses, inconveniences, public disclosures, and publicity, has the potential to seriously chill

free expression and healthy competition, as well as the development of technology and software

designed to guard against internet fraud and abuse. *See, e.g.*, *Levitt v. Yelp! Inc.*, No. C-10-1321,

2011 U.S.Dist. LEXIS 124082, *27 (N.D.Cal. Oct. 26, 2011) (citing the explicit statements of

public policy included in the CDA by Congress). An immunity from suit, unlike a defense to a

claim on its merit, protects the immunized party from those potential harms—and its protection

is effectively lost if a case is erroneously permitted to proceed into discovery or even trial.

Accordingly, "close cases. . . must be resolved in favor of immunity." *Roommates.com*, 521 F.3d

at 1174.

Websites such as MyMovingReviews.com serve an important function in today's

increasingly internet-based economy, in allowing customers to educate themselves and gain

information from multiple sources. This is crucial in an industry where customers are not likely

to be repeat customers, such as the moving services industry, and where there is a documented,

pervasive patterns of deceptive, abusive, and in some cases, even criminal conduct by companies

targeting consumers. In fact, the Senate Committee on Commerce, Science, and Transportation

conducted an investigation and issued a dated September 19, 2012, entitled "Internet Moving

Brokers a New Consumer Protection Problem in the Household Goods Moving Industry." *See*

7

984810.1

**Exhibit 4**. The Committee found that companies, including some of the plaintiffs companies, were engaged in "gaming" internet search engines to boost their company names in internet searches, using misleading websites, using multiple names or names similar to other companies to increase customer confusion, charging unreasonable and/or hidden fees, and even taking, customers' goods "hostage." *Id. at* 13-26. Sites such as MyMovingReviews.com are thus important actors in the online free market.

MyMovingReviews.com's value to consumers is that it provides information. In order to increase the value of that information, its operators employ software intended to filter inauthentic content. As stated on the website, "[w]e are very serious about reviews quality. Our sophisticated consumer reports rating system filters the fake local and cross country moving reviews from the real reviews." *See* FAC, Ex. A. The CDA was expressly intended to allow the market to regulate these types of communications, and to foster the development of filtering algorithms of the type that are used on MyMovingReviews.com. What the plaintiffs seek to do—prevent MyMovingReviews.com from allowing consumers to criticize their companies by holding its operators liable as the publishers—is exactly what Section 230 is intended to prevent. Accordingly, the plaintiffs' claims must be dismissed.

**B.     ALLEGATIONS SET FORTH IN PLAINTIFFS' FIRST AMENDED COMPLAINT[6]**

The allegations in the plaintiffs' First Amended Complaint ("FAC") make it abundantly clear that the claims they seek to assert against Panayotov—aside from Counts V and VI which assert trademark and copyright infringement and are subject to dismissal under the 12(b)(6) standard—are statutorily barred by Section 230. Although the plaintiffs attempt to allege conduct

---

[6] While treating the plaintiffs' allegations as true for the purposes of this motion, the defendant disputes many of the allegations contained in the FAC and reserves the right to contest them at trial.

or motives that they believe bring Panayotov's alleged conduct outside of the bounds of the immunity, allegations of improper motives cannot be considered in connection with an analysis of Section 230, and, moreover the type of sketchy and speculative allegations presented by the plaintiffs are insufficient to allow this case to proceed beyond the pleadings stage.

1.      **Allegations Relating to MyMovingReviews.com**

The plaintiffs allege that "the defendants" own and operate a consumer review website MyMovingReviews.com. FAC ¶1. The plaintiffs allege that Panayotov and Andreev also own and operate a moving company, defendant Xpress Movers, LLC ("Xpress Movers") that they claim competes with their businesses. *Id.* The plaintiffs allege no facts which would support the allegations that the defendants they have chosen to name are all "in cahoots." There are no facts alleged which, if proven, would support the conclusory allegations regarding the existence of a conspiracy. The plaintiffs do not even allege any facts that would support their claim that Xpress Movers, a Massachusetts company, directly competes with any of the plaintiff companies, which, with one exception, are located in either Florida or North Carolina. FAC ¶¶ 6-11.

MyMovingReviews.com is a website where consumers may submit moving company reviews and read reviews posted by other consumers. *See* FAC Exhibit A (incomplete printout of www.mymovingreviews.com/about.php); *see* **Exhibit 5**, About MyMovingReviews.com, www.mymovingreviews.com/about/php (complete printout). As explained on the website,[7] "[a]lthough we filter the reviews we suspect are fake and/or do not comply with our terms of

---

[7] Because the website is central to the plaintiffs' FAC and the FAC specifically references and actually attaches incomplete portions of pages from the website, the contents of the website as a whole should be considered in ruling on this motion. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (citing *Cortec Indus., Inc.* v. *Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991) ("The problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff . . . Where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.")

9

service, we are aware that no algorihm [sic] is perfect and some reviews may be posted that are not authentic. In that case, please contact us so we can take the appropriate action." Companies may dispute reviews on several grounds. *See* **Exhibit 6**, How do I dispute a moving review?, www.mymovingreviews.com/questions/dispute-a-moving-review/. The Terms of Service of the website make it clear that the website operators reserve the right to exercise editorial discretion with regard to which reviews are publishe. *See* **Exhibit 7**, Terms of Service of MyMovingReviews, www.mymovingreviews.com/terms-of-service.php. The website allows moving companies to become Registered Movers free of charge, which permits companies that register to respond to customer reviews, add promotional text, get targeted feedback, and add the Registered Mover badge to their profile, just as plaintiff Father & Sons has done. *See* FAC, Exhibit K, **Exhibit 3**. Registered Movers may also upgrade to a premium account that gives them access to advertising opportunities, leads relating to potential customers, and promotional opportunities. *See* **Exhibit 3**; *see also* FAC at ¶ 4.

The plaintiffs complaint that "the defendants," without any more particularized attribution of responsibility for the alleged conduct, "have deleted positive, legitimate reviews" about their services and have removed negative reviews about the defendants' services[8] on MyMovingReviews.com. *Id.* ¶ 3. The plaintiffs essentially claim that the defendants select which reviews, submitted by third parties, will be made visible to visitors to the website, and that they selection process is "biased" against them.

The plaintiffs further complain that statements made on MyMovingReviews.com are false or misleading. Specifically, they note that the defendants represent on the website that MyMovingReviews.com provides visitors with: "real customers' moving experiences and

---

[8] The only "services" reviewed on the website are those of moving companies, so presumably this refers to defendant Xpress Movers.

984810.1

moving testimonials," ratings from "actual customers," and "authentic local, state to state and cross country moving company reviews." *Id.* ¶ 21. The plaintiffs allege, wholly in conclusory fashion, that these statements are false. However, the plaintiffs do <u>not</u> allege that <u>Panayotov</u> creates any of the moving company reviews on the site, or alters any submitted by third parties, only that he participates in the decision of which reviews to publish.

The plaintiffs acknowledge that the MyMovingReviews.com uses an algorithm to automatically review submissions. They cite to language on the website that informs visitors that a "sophisticated consumer reports rating system filters the fake local and cross country moving reviews from the real reviews so  you can see the most accurate and up to date rating information to base your decision on." *Id.* ¶ 21.  Notably, although the plaintiffs allege that Panayotov makes false claims of "neutrality," none of the exhibits that they attach to their Complaint—all of are represented to be printouts from the website—contains any such statements.[9]

The plaintiffs go on to allege that "the defendants" use the plaintiffs' trademarks to divert consumers to the website, from which they derive revenue from advertising and referrals. *See* FAC ¶¶ 31-36. None of the "trademarks" referenced by the plaintiffs are identified in the Factual Background section of the FAC. The plaintiffs set forth a number of conclusory allegations purporting to demonstrate that the defendants are engaged in a civil conspiracy, but aside from a formulaic recitation of factors apparently gleaned from case law, there are no facts alleged that would support a reasonable inference that the defendants were involved in an unlawful conspiracy. It is fairly clear from reading the complaint that all of these allegations are based on pure speculation and are inserted in an attempt to keep all defendants in the case. *Id.* ¶¶ 38-40.

---

[9] This is not to say that Panayotov concedes that the website is biased. However, this fact is noted because, notwithstanding the plaintiffs' characterization of statements made on the website, they should "speak for themselves," and, moreover, there is nothing unsavory about the fact that a website collects advertising revenue in order to fund its operations.

11

With regard to defendant Xpress Movers, the plaintiffs complaint that it has a "perfect, 5-star rating on MyMovingReviews.com," while on another consumer review website, Yelp.com, its has a 2.5 star rating. *Id.* at ¶ 24,[10] 28. The plaintiffs allege that the defendants remove negative reviews about Xpress Movers from MyMovingReviews.com and Yelp in order to improve Xpress Movers' rating on those sites. *Id.* at ¶¶ 25, 27-28. As factual support for this claim, the plaintiffs allege that on August 21, 2012, one negative review of Xpress Movers, allegedly authored by "AprilS," was filtered from visibility on MyMovingReviews.com. *Id.* ¶¶ 26-27, Exhibit C. Notably, the plaintiffs do not allege that this negative review was an authentic one from an actual customer of Xpress Movers.[11] The plaintiffs also allege that defendant Xpress Movers has falsely claimed to be accredited by the Better Business Bureau. *Id.* at ¶¶ 30-32.

The plaintiffs allege that they hired an "IT specialist" to post fake reviews on MyMovingReviews.com from different IP addresses. *Id.* at ¶ 36. Some of these reviews were allegedly filtered. *Id.*  Only three of the named plaintiffs allege specific instances of positive reviews of their companies being filtered:

- Colonial Van Lines, Inc. claims that, over the course of two months in 2012, it posted two fake reviews of its own services to MyMovingReviews.com, and that the positive one was filtered,[12] but the negative one was not. *Id*. at ¶¶ 38-39. It also claims that a

---

[10] Paragraph numbers 24-41 are repeated in the FAC and the references to paragraph numbers in this section are to the second set of paragraphs on pages 10-12 of the FAC.

[11] It appears to be a fake review posted by plaintiffs, based on the attached a screenshot of an email confirming receipt of AprilS's negative review of defendant Xpress Movers from info@mymovingreviews.com, showing that plaintiffs had access to AprilS's email account on August 21, the same date that it was posted. *See* FAC, Ex. C at 2.

[12] In addition to the fact that the reviews were properly filtered because they were inauthentic, the positive review that was filtered, may have been filtered violating the Terms of Service because it contained references to the experiences (negative) of another customer that was not the reviewer.

"real"[13] positive review posted on July 17, 2012 was filtered from the website. *Id.* at ¶ 40.

- ▪ Nationwide Relocation Services, Inc. claims that, over the course of three months, it posted one fake positive review of its services, which was filtered, and one "real" positive review, which was also filtered. *Id.* at ¶¶ 41-42.

- ▪ American Van Lines, Inc. claims that, over the course of three months, a review that it claims was "real" but which it submitted to MyMovingReviews.com itself, in violation of the website's terms of service, was filtered, and that a second positive review from an actual customer was filtered.[14] *Id.* at ¶¶ 43, 45. In addition, it claims that it posted a fake negative review that was not filtered. *Id.* at ¶ 44.

To summarize, only three of the plaintiffs alleged instances of improper filtering that affected their profiles. They claim that two admittedly fake positive reviews that they themselves submitted about themselves were filtered, that one positive review that one of the plaintiffs submitted about itself (purportedly on behalf of a customer) was filtered, that two "real" positive reviews were improperly filtered, and that two fake negative reviews that they themselves submitted were not filtered, but should have been. The other three named plaintiffs, Father & Son Moving & Storage, Moving & Storage, Inc. d/b/a Neighbors Moving and Storage, and MBM Moving Systems, LLC <u>have not alleged that any reviews of their companies, whether real or fake, positive or negative, have been filtered</u>. Perhaps more significantly, none of the plaintiffs have identified any false or misleading statement that was allegedly made about their companies by defendant Panayotov, or for that matter, by any defendant.

As to their intellectual property claims, only plaintiffs Neighbors Moving & Storage and American Van Lines assert that the defendant has improperly used their trademarks on the site.

---

[13] The word "real" is put in quotation marks, because as neither the plaintiffs nor the defendants are alleged to have authored or submitted the allegedly "real" review, the plaintiffs' claim that it was an authentic review is pure speculation.

[14] The allegedly "authentic" of review American Van Lines from Gregory Wibbels supposedly echoed a Customer Service Quality Review Survey that he completed; however, the Customer Service Quality Review Survey that was attached as an Exhibit to the Complaint identified the carrier as "Colonial." *See* FAC, Ex. I at 2.

The allegedly improper use is not clearly described. Father & Son Moving & Storage asserts a copyright infringement claim, but the plaintiffs have not alleged that it has a registered copyright covering the allegedly infringed work.

### 2.    The Plaintiffs' Theories of Liability

The plaintiffs have asserted six counts against the defendants, and purport to assert each as a "conspiracy" claim. Counts I (False Advertising and Unfair Competition Under the Lanham Act), II (Violation of M.G.L. c. 93A), and III (Common Law False Advertising and Unfair Competition) all rest on the same basic allegations: that the defendants have unlawfully conspired to create and operate a website on which consumers can post reviews of moving companies, which the defendants then filter in a way that is biased against the plaintiffs and in favor of their commercial interests, while allegedly claiming to offer neutral, unbiased reviews and rating, and guaranteeing that all posted reviews are from actual consumers, and that any inauthentic ones are removed; and falsely claiming that Xpress Movers is accredited by the Better Business Bureau ("BBB"). In Count IV, the plaintiffs allege that the same conduct constitutes "tortious interference." In Count V, two plaintiffs only, allege that the defendants have infringed their trademark rights. In Count VI, Father and Son, only, alleges that the defendants have infringed its copyright.

Nowhere, anywhere in the Complaint, do the plaintiffs allege that Panayotov authored any of the website content specifically relating to their companies. Similarly, the plaintiffs fail to allege any particulars regarding actual existing contractual relationships that were harmed, lost customers, reduced revenues, customer confusion, or any other indicia of actual harm resulting from the conduct alleged. To the extent that the claims are based upon the filtering and

publication of content authored by third parties, including consumers, the claims are barred by the CDA.  The remaining claims fail as a matter of law, as set forth more fully below.

## II.    ARGUMENT

### A.    STANDARD OF REVIEW FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

In ruling on a motion  to dismiss for failure to state a claim under Rule 12(b)(6), the Court must take the plaintiffs' factual allegations as true and make all reasonable inferences in their favor. *Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005).  However, the Court must grant a motion to dismiss for failure to state a claim on which relief can be granted where the factual allegations are insufficient to "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (U.S. 2007).

In reviewing the sufficiency of a complaint, courts should not accept as true legal conclusions couched as factual allegations.  *Id.* at 555; *see also Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir. 1996). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  Likewise, "[c]onclusions that are not supported by the facts that are alleged in the complaint 'deserve no deference.'" *Massachusetts Laborers' Health & Welfare Fund, by and Through its Trustees v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 240-241 (D. Mass. 1999) (citations omitted). "[S]ummary legal conclusions that are contradicted or 'belied by the facts alleged' may be disregarded." *Id.* (quoting *In re Lane*, 937 F.2d 694, 698 n.7 (1st Cir. 1991)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678. Unsupported conclusions and assertions are not entitled

984810.1

to credit under this standard. *Universal Communication Systems, Inc.*, 478 F.3d at 415 (citing

*Palmer v. Champion Mortgage*, 465 F.3d 24, 25 (1st Cir. 2006)).

    In ruling on a motion to dismiss, the Court may consider "the facts alleged in the

pleadings, documents attached as exhibits or incorporated by reference in the complaint and

matters of which judicial notice can be taken." *Arruda & Beaudoin v. Astrue*, 2013

U.S.Dist.LEXIS 47166, *22-23 (D. Mass. Mar. 27, 2013) (citing *Nollet v. Justices of the Trial*

*Court of Mass.*, 83 F.Supp.2d 204, 208 (D. Mass. 2000), *aff'd*, 248 F.3d 1127 (1st Cir. 2000)).

In addition, the Court may consider "documents the authenticity of which are not disputed by the

parties," "official public records," and documents that are either central to plaintiffs' claim or

which are "sufficiently referred to in the complaint." *Arruda & Beaudoin*, 2013 U.S.

## B.    SECTION 230 OF THE COMMUNICATIONS DECENCY ACT MANDATES DISMISSAL OF COUNTS I, II, III, IV, AND VI.

    The First Circuit has held that Section 230 provides an immunity that is properly raised in

a motion to dismiss for failure to state a claim on which relief can be granted. *See Universal*

*Communication Systems*, 478 F.3d at 415 (dismissing plaintiff's complaint on motion to dismiss

for failure to state a claim on the basis of Section 230 immunity). That court held that the

immunity is applicable if: (1) the defendant is alleged to be a "provider or user of an interactive

computer service"; (2) "the claim is based on 'information provided by another information

content provider"; and (3) the claim seeks to treat the defendant "as the publisher or speaker" of

that information."  *Id.* at 418. The First Circuit has held that, in light of Congressional intent and

consistent with other courts' interpretation of the statute, "Section 230 immunity should be

broadly construed." *Id.* at 419. Counts I, II, III, IV, and VI are completely barred by this

immunity.

1.      **The Defendant is a Provider of an Interactive Computer Service.**

The plaintiffs allege that Panayotov operates MyMovingReviews.com.[15] FAC ¶ 12. A

website operator is, as defined by Section 230, a provider of an "interactive computer service,"

i.e., a provider of an "information service, system, or access software provider that provides or

enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). *See*

FAC at ¶¶ 12, 23. First Circuit precedent supports this conclusion: "web site operators. . . are

providers of interactive computer services within the meaning of Section 230." *Universal*

*Commun. Systems. v Lycos, Inc.* 478 F.3d at 419 (citing *Carafano v. Metrosplash.com, Inc.*, 339

F.3d 1119, 1123 (9th Cir. 2003)). As a website operator, Panayotov is immune from claims

seeking to treat him as the "publisher or speaker" content provided by third parties.

2.      **Plaintiffs Claims are Based upon on the Publication of "Information**
        **Provided by Another."**

The plaintiffs' central factual allegation is that that Panayotov selectively filters reviews

submitted by third parties, in order to benefit a particular moving company or companies and put

others at a disadvantage. Thus, the objectionable content—reviews submitted by third parties for

publication on the website—falls squarely within the statutory definition of "information

provided by another information content provider" as defined at 47 U.S.C. § 23(f)(3). *Universal*

*Commun. Sys. v Lycos, Inc.* 478 F.3d at 419. The plaintiffs make no claim that Panayotov

authored, in whole or in part, any of the reviews, positive or negative, that were posted on

---

[15] Where an individual is alleged to be personally involved in the operation of the website at
issue, he constitutes a "provider" for purposes of the CDA. *See, e.g.*, *Ascentive*, 842 F.Supp. 2d
at 474 (citing *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, No. 2:04-cv-47-FtM-
34SPC, 2008 U.S. Dist. LEXIS 11632, 2008 WL 450095, at *8 (M.D. Fla. Feb. 15, 2008) (owner
and operator of consumer review website immune under CDA as provider of an interactive
computer service)).

984810.1

MyMovingReviews.com. Nor have they alleged any facts that would give rise to an inference

that Panayotov was "'responsible,' even 'in part,' 'for the creation or development' of the

alleged misinformation." *Id.* at 420.

Although the plaintiffs, attempting to plead around the Section 230 immunity, attempt to

premise some liability on statements made on the website regarding the "neutrality" of the

website and the automated filtering process employed in order to detect "inauthentic" reviews or

reviews which violate the site's Terms of Service, these claims are insufficient to avoid the

immunity. In the first place, the plaintiffs mischaracterize the statements made on the website, as

demonstrated by the Exhibits they attach to the complaint, and as discussed more fully, *infra*,

section III.A. The website makes no affirmative statement or guarantee that its filters are one

hundred percent accurate, and the fact that companies are permitted to dispute reviews

demonstrates that such a guarantee is not contemplated.

Furthermore, those statements must be read in conjunction with the websites's Terms and

Conditions. *See, e.g.*, *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) ("Though

AOL reserved the right to remove messages deemed not in compliance with the Community

Guidelines, it expressly disclaimed liability for failure or delay in removing such messages.")

MyMovingReviews.com's Terms and Conditions provide, in part:

> **1.      DESCRIPTION OF OUR WEBSITE**
> Our Web Site consists of text, software, photographs, graphics, illustrations,
> artwork, video, music, sound, names, logos, trademarks, service marks and other
> content ("Content") that is published, posted, uploaded, distributed, disseminated
> or otherwise made available  ("Posted") to the general public. Our Web Site is
> dedicated to providing a means of organizing and displaying material created by
> third parties. Our Web Site's Content includes but is not limited to ratings,
> comments, discussions, and links to other services. The Content conveyed by the
> site is the responsibility of the third party creators. We have no responsibility for
> such content and are merely providing access to such Content as a service to you.
> The nature of the Web Site encourages open discussion, which may result in the
> automatic posting of offensive, harmful, inaccurate or otherwise inappropriate

material, or in some cases material that has been mislabeled or is otherwise deceptive. Users of our Web Site are expected to exercise caution, common sense, and proper judgment when viewing this Content.

\*　　\*　　\*

**14.	NO LIABILITY FOR CONTENT**

We do not endorse, support, represent or guaranty the truthfulness, accuracy, or reliability of any Content Posted on our Web Site. You acknowledge that any reliance on material Posted on our Web Site will be at your own risk.  We cannot monitor all Content that is Posted on our Web Site, and therefore we have no obligation to monitor the Content. However, we reserve the right at all times to disclose any information as necessary to satisfy any applicable law, regulation, legal process or governmental request, or to edit, refuse to post or to remove any information or materials, in whole or in part, for any reason whatsoever, at our sole discretion.

Terms and Conditions, **Exhibit 7**.

The organization of the website, and information about the site's policies and Terms of Service do not create an independent ground for liability. *See, e.g.*, *Goddard v. Google*, 640 F.Supp. 2d 1193, 1198 (N.D.Cal. 2009) (noting that where allegedly misleading postings were "contrary to Google's express policy," that fact cut <u>against</u> a finding that a service provider crossed the line into being a content provider or "co-developer");  *see also Ascentive, LLC*, 842 F.Supp. 2d at 474-475 (holding that plaintiffs did not adequately allege that website operator was "content provider" where allegations did not claim that operator authored reviews, only that operator "encourage[d] and create[d] the most negative postings it can" and organized site so that negative reviews were most prominent).

In the second place, allowing plaintiffs to make an "end run" around the Section 230 immunity by premising liability on introductory information about the website and the source of its third party content would destroy the utility of the immunity. If plaintiffs could avoid the immunity simply by alleging that they were harmed as a result of general information describing the website or its purpose on a service provider's page, the immunity could only apply where a

website simply acted as a literal bulletin board, with no other explanatory content or

organizational information to facilitate visitors' use of the site.

> **3.    Plaintiffs Seek to Hold the Defendant Liable as the Publisher or Speaker of Information or Content Provided by Others.**

A service provider's "exercise of a publisher's traditional editorial functions – such as

deciding whether to publish, withdraw, postpone or alter content" are immunized by Section 230.

*Universal Commun. Sys.*, 478 F.3d at 421 (quoting *Zeran*, 129 F.3d at 330). In the case presented

to this Court, the plaintiffs allege no more than that. Essentially, the plaintiffs claim that

Panayotov, alone or in concert with the co-defendants, manipulates which consumer reviews will

be made visible to visitors to MyMovingReviews.com, and does so with a bias in favor of

defendant Xpress Movers and against the plaintiff companies. However, it is now well

established that allegations of "manipulation" of third party content do not turn a service

provider into a content provider, because choosing which third party content to publish, not

publish, or remove is precisely the conduct immunized under the CDA.

For example, in *Universal Communications Systems*, the First Circuit rejected a claim

that a service provider could be held liable for failing to prevent content providers from

"spread[ing] information more credibly, by doing so under multiple screen names and in a

context that is associated with objective content." *Universal Commun. Sys. v Lycos, Inc.* 478

F.3d at 420. In other words, the plaintiffs sought to hold the website operator liable for <u>not</u>

attempting to filter out inauthentic content. The claims were  held barred.

Here, the plaintiffs attempt to hold Panayotov liable for the opposite—attempting to filter

suspect content, for example, reviews not submitted by actual customers. In either scenario,

however, the service provider's decisions are immune from liability. *Id.* at 422 ("immunity

applies not only for the service provider's decisions with respect to that posting, but also for its

984810.1

inherent decisions about how to treat postings generally"); *see also Ben Ezra, Weinstein, and Co., Inc. v. America Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000) ("By deleting the allegedly inaccurate stock quotation information, Defendant was simply engaging in the editorial functions Congress sought to protect").

In a similar case recently decided by the district court for the Northern District of California, claims against the operator of the consumer review website Yelp! were dismissed pursuant to Section 230 immunity. *Levitt*, 2011 U.S.Dist. LEXIS 124082. In that case, the plaintiffs had alleged that Yelp had acted in bad faith with regard to the operation of its website because it allegedly promised more favorable treatment to businesses that agreed to purchase advertising from it, and that when the plaintiff companies refused to do so, their aggregate ratings declined as a result of Yelp's intentional manipulations. *Id.* at *5-6. The district court held that this failed to state a claim in light of the Section 230 immunity. Quoting the Ninth Circuit Court of Appeals, the court noted that "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post on line is perforce immune under section 230." *Id.* at 20 (quoting *Roommates.com*, 521 F.3d 1157). The alleged reasons that editorial decisions were made were immaterial. This is consistent with the policy underlying the immunity, which is to permit market forces to make corrections, rather than imposing government mandated regulations and restrictions.

The Section 230 immunity applies both to the plaintiff's federal and state law claims. *See* 47 U.S.C. § 230(c)(1) ("[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider"); 47 U.S.C. § 230(e)(3) ("[n]o cause of action may be brought and or liability may be imposed under any State or local law that is inconsistent with this section.") Accordingly,

plaintiffs' claims for state and federal unfair competition and false advertising, common law tortious interference, and violations of the state Consumer Protection Act must be dismissed.

> **4.      An Inquiry into the Motives of the Service Provider is Improper in Light of the Nature of the Statutory Immunity.**

The plaintiffs offer a handful of examples where they claim Panayotov chose which reviews should remain visible on MyMovingReviews.com and which should not. Of the miniscule sample provided, some fake reviews were allegedly filtered, some fake reviews were allegedly allowed to remain visible, and some possibly authentic reviews were filtered. The plaintiffs claim to have been damaged as a result of the alleged "biased" filtering, and claim that it was intended to put them at a disadvantage in competing with Xpress Movers. Thus, the plaintiffs appear to be asserting a theory of "bad faith" editorial decision making, that they presumably hope will bring their claims outside the scope of Section 230. However, this tactic is unavailing.

The protections of Section 230(c)(1) apply categorically, without regard to the service provider's subjective state of mind or motivations. *See, e.g.*, *Green*, 218 F.3d at 470 (upholding immunity for allegedly negligent failure to remove defamatory material after notice); *Ben Ezra*, 206 F.3d at 985-86 (holding that immunity applied where AOL communicated with providers of stock quote information frequently and had at times deleted stock symbols and other information in an effort to correct errors); *Goddard*, 640 F.Supp. 2d at 1197 (holding that immunity applied to Google's Keyword Tool, where Google allegedly knew that its suggested keywords were being used to further fraudulent transactions online); *Zeran*, 129 F.3d at 331-333 (holding that service providers are immune even when they have actual knowledge of falsity); *Asia Economic Ventures LLC*, 2011 U.S.Dist.LEXIS 145380 *18-20 (holding that defendant's deliberate manipulation of software code in favor of paying customers in order to boost search visibility

was immune "[a]bsent a changing of the disputed reports' substantive content that is visible to

consumers"); *Gentry v. EBay, Inc.*, 99 Cal. App. 4th 816 (2002).

Allowing an inquiry into the motives of every editorial decision made, whether to allow

publication or not of third party content on a service provider website would be untenable and

would destroy the statutory protection created by Congress. As the court noted, "traditional

editorial functions often include subjective judgments informed by political and financial

considerations," so any editorial decision could be perceived or characterized as "biased" or

designed to "manipulate." *Levitt*, 2011 U.S.Dist.LEXIS 124082, * 27. In addition, allowing such

inquiry could well result in the proverbial litigation "floodgate" opening. As the *Levitt* court,

quoting the Ninth Circuit, stated:

> Determining what motives are permissible and what are not could prove
> problematic. Indeed, from a policy perspective, permitting litigation and scrutiny
> [sic] motive could result in the "death by ten thousand duck-bites" against which
> the Ninth Circuit cautioned in interpreting § 230(c)(10).

*Id.* at *27 (quoting *Roommates.com*, 521 F.3d at 1174.

In addition to the policy concerns raised by the idea of inquiring into the motivation for

individual editorial decisions of a service provider, the *Levitt* court found support in the language

of the statute, noting that where Section 230(c)(1) "contains no explicit exception for

impermissible editorial motive," but Section 230(c)(2) does refer to conduct taken in "good

faith," then Congress intended that the Section 230(c)(1) immunity would apply regardless of the

intent or motive of the service provider. *Levitt*, 2011 U.S.Dist.LEXIS 124082, * 23-24.

### 5. The Fact that MyMovingReviews.com Creates Aggregated Ratings Based on Third Party Content Does not Take it Outside of the Section 230 Immunity.

If Section 230 precludes the courts from taking on the rule of super-editor, with the

responsibility of reviewing and second guessing the editorial and publisher decisions of service

providers as to whether individual reviews should be published, then it must also preclude a similar review of the aggregation of those reviews. This is because the aggregate rating is merely a compilation of the multiple ratings provided by third party content providers. It is not separate "content" authored by Panayotov. *See Levitt*, 2011 U.S.Dist. LEXIS 124082, *22 (citing *Gentry*, 99 Cal. App. 4th at 834; *Carafano*, 339 F.3d at 1124).

The plaintiffs do not allege that the "star" ratings of their companies do not reflect an aggregation of the reviews that are posted about those companies. Indeed, the plaintiffs do not even mention how many stars each respectively has rated on the site at all, choosing to limit their complaint to the fact that defendant Xpress Movers has a 5 star rating, while on another review site, it "does not fare so well." These allegations do not describe actionable conduct.

**C.**     **THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR FALSE ADVERTISING OR UNFAIR COMPETITION UNDER THE LANHAM ACT OR STATE COMMON LAW, OR FOR VIOLATION OF M.G.L. CHAPTER 93A (COUNTS I, II, AND III).**

The elements of a claim based for false advertising or unfair competition, unrelated to the use or infringement of a trademark, brought pursuant to the Lanham Act are:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision;   (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.,* 284 F.3d 302, 310-311 (1st Cir. 2002); *see* 15 U.S.C. § 1125(a). A common law claim for false advertising or unfair competition requires essentially the same elements. *See, e.g.*, Restatement (Third) of Unfair Competition, § 2 ("One who, in connection with the marketing of goods or services, makes a representation relating to the actor's own goods, services, or commercial activities that is likely to deceive or

mislead prospective purchasers to the likely commercial detriment of another under the rule stated in § 3 is subject to liability to the other for the relief appropriate under the rules stated in §§ 35-37.") Section 11 of chapter 93A provides that "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice" may bring a civil action against the competitor. M.G.L. c. 93A, § 11. Each of these claims are based on essentially the same conduct and are subject to dismissal under the CDA immunity, as set forth above.

Plaintiffs have attempted to plead around the immunity, however, and attacked certain statements that they claim were made by "the defendants." Specifically, the plaintiffs claim that the defendants falsely state that Xpress Movers is accredited by the Better Business Bureau ("BBB"), that MyMovingReviews offers "neutral, unbiased ratings," and that all reviews on the website are authentic because the defendants are able to accurately filter them. The plaintiffs fail to state a claim against Panayotov based on any of these representations, however.

### 1. Xpress Movers is Accredited by the Better Business Bureau.

The plaintiffs allege no facts that would give rise to a reasonable inference that Panayotov personally falsely represented that Xpress Movers was accredited by the BBB. The plaintiffs allege no facts that would give rise to a reasonable inference that the representation is material, or likely to influence a purchasing decision. The fact that a business is "accredited" by the BBB does not provide any information about that business other than the fact that it has paid a fee to the BBB and meets BBB criteria for having policies in place for responding to consumer complaints. *See* **Exhibit 8** Xpress Movers, LLC BBB Profile, http://www.bbb.org/boston/business-reviews/movers/xpress-movers-llc-in-wilmington-ma-

102458/# ("To be accredited by BBB…BBB must determine that the business meets BBB accreditation standards, which include a commitment to make a good faith effort to resolve any consumer complaints. BBB Accredited Businesses must pay a fee for accreditation review/monitoring and for support of BBB services to the public.")  Furthermore, the plaintiffs have not alleged how this statement did or could likely injure them. For example, as noted above, the plaintiffs are, with one exception, located in Florida or North Carolina and are not likely in competition for customers in Massachusetts, where Xpress Movers is located.

Finally, Xpress Movers currently is accredited by the BBB. *See* **Exhibit 8**. The First Circuit has held that injunctive relief is available upon a "showing that the defendant's activities are likely to cause confusion or to deceive customers," but that in order to recover damages,  "a plaintiff must show actual harm to its business, a diversion of sales, for example." *Camel Hair & Cashmere Institute, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986); *see also* M.G.L. c. 93A, § 11. Since at least February 28, 2013, Xpress Movers has been accredited by the BBB, so the plaintiffs claim is rendered moot insofar as they seek prospective relief. As they have not alleged any actual injury to their businesses as a result of this alleged misrepresentation, their claims should be dismissed.

> **2.**    **Plaintiffs's Allegations do not Accurately Reflect Statements and Information Actually Set Forth on MyMovingReviews.Com.**

Again, although the defendant disputes the plaintiff's allegation that the website is "biased," either in favor of Xpress Movers or against the plaintiffs, more importantly for purposes of this motion, despite the plaintiffs' characterizations of statements made on MyMovingReviews.com, the Exhibits to the FAC conclusively demonstrate that the defendant has made no unqualified representations or warranties, that the reviews posted are "unbiased" or "neutral."  Those words are not used anywhere. Indeed, any such statement on a consumer

review website would be absurd, given that the purpose of a consumer review website is for consumers to share their own <u>opinions</u> about service providers such as moving companies. It is the very nature of a consumer review website to contain "biased" points of view. The plaintiffs simply mischaracterize the explanatory introductory content of the website in a manner which suits their theory of liability. Thus the alleged "misrepresentation of fact" <u>was never actually made</u> by the defendant, as demonstrated by the plaintiffs' exhibits. "[S]ummary legal conclusions that are contradicted or 'belied by the facts alleged' may be disregarded." *Massachusetts Laborers' Health & Welfare Fund.*, 62 F. Supp. 2d at 240-241 (quoting *In re Lane*, 937 F.2d 694, 698 n.7 (1st Cir. 1991)). Here, the "facts alleged" include facts evident from the exhibits attached to the FAC.

Moreover, what the Exhibits to the FAC do show is that website informs visitors that reviews are from "actual customers" and that consumers could contact review writers who are willing to discuss their reviews. FAC Ex. A. at 1. The site offers visitors the opportunity to "[c]ompare movers based on reviews, consumer reports, testimonials and complaints." *Id.* In addition, the website discloses that there ads on the site, and labels them as such. *Id.* Visitors are informed that

> The ads on our site are supplied by Google or by MyMoving Reviews. We have little control over which companies are presented in the ads by Google. You should research each of the companies before choosing a mover from these ads. You use the companies that are shown in the advertisements at your own risk. We do however ask that you make sure to come post a review after your transaction is completed.

*Id.* These statements put visitors on notice that there is a lot of information available, and that it is up to the visitor to review and evaluate that information in making his or her decision. *See also* **Exhibit 7**, Terms and Conditions, and the discussion, *supra*. As no misrepresentation occurred, there can be no claim that the plaintiffs were harmed. Indeed, the plaintiffs fail to allege any facts

984810.1

that would support their claim that these statements have caused or are likely to cause them injury.

Likewise, the plaintiffs' allegations regarding the "representations" supposedly made about the star ratings of various companies blatantly mischaracterize the website content and do not plausibly suggest that the might be entitled to any relief on this court. The plaintiffs' allegations on these claims point are wholly conclusory and utterly lacking in any factual foundation. Indeed, three of the six named plaintiffs, Father & Son, Neighbors, and MBM have not alleged that any reviews of their companies, whether real or fake, positive or negative, have been filtered. Although the plaintiffs claim that Xpress Movers has a lower rating on another consumer review website, because "ratings" are "opinions" this provides no support for the claim that the ratings on MyMovingReviews.com are "false." Similarly, they provide nothing that would suggest that more positive reviews should be visible on the website than are appearing. The plaintiffs provide no instances of customers or prospective customers deciding not to use the plaintiffs services as a result of the ratings, or of any other injury resulting form the use of the aggregate ratings.

As to the claim that Panayotov has made representations of fact on the website that "all" customer reviews are authentic and that the websites' filters are one hundred percent perfect and accurate, again, those alleged representations appear <u>nowhere</u> on the website. The Exhibits attached to the FAC show only that the defendant represents that he uses a "sophisticated filter to detect reviews that does [sic] not meet our terms of service." FAC Exhibit A at 4. The plaintiffs' allegations—arguments, more accurately—in the pleadings are once again belied by the Exhibits appended to them.

Furthermore, it is well settled that in a false advertising claim, the court must view the alleged misrepresentations in the context of the entire accused "advertisement." *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 253 (3d Cir. 2011). Viewing the website as a whole, including the Terms and Conditions for submitting reviews, information about how reviews are automatically filtered, and caveats advising consumers to do their own research, it should be clear that no reasonable consumer would be misled into believing that MyMovingReviews.com was able to guarantee one hundred percent accuracy in publishing all authentic reviews and filtering all fake reviews. *See id.* (holding that a court can determine that an advertisement is not false or misleading as a matter of law.) Additionally, it is clear to a visitor that the site allows advertisements—it is not a "non-profit" with no commercial aspect— similar to Yelp or any other review site.

### 3. Plaintiffs' Chapter 93A Claim is Simply a Relabeling of their Unfair Competition Claims.

The plaintiff's claim for relief pursuant to Section 11 of M.G.L. c. 93A is simply another restatement of its other state and federal claims. Just like any other claim, a chapter 93A claim is subject to dismissal for failure to state a claim. *See, e.g.*, *Massachusetts Sch. of Law v. ABA*, 142 F.3d 26, 42 (1st Cir. 1998); *JSB Indus. v. Nexus Payroll Servs., Inc.*, 463 F. Supp. 2d 103 (D. Mass. 2006)). To establish the liability of a defendant on a chapter 93A claim a plaintiff must demonstrate that the defendant's conduct "(1) falls within 'the penumbra of some common-law, statutory, or other established concept of unfairness'; (2) is 'immoral, unethical, oppressive, or unscrupulous'; and (3) causes 'substantial injury to [consumers or other businesspersons].'" *Famm Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 108 (1st Cir. 2009) (quoting *Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28, 37 (1st Cir. 2008)). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may

qualify for consideration as a G.L. c. 93A violation is a question of law." *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 112 (2006). To state a claim, "[t]he objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 396 N.E.2d 149, 153 (1979). In addition, a plaintiff must demonstrate a causal connection between the conduct alleged to have violated chapter 93A and the claimed loss in order to prevail on her consumer protection claim. *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 401 (2004).

In addition to the infirmities delineated above, the plaintiffs have alleged no actual injury resulting from alleged false statements, only a speculative reference to harm to their reputation and goodwill. *See, e.g., Schwanbeck v. Federal-Mogul Corp.*, 31 Mass. App. Ct. 390 (1991) (explaining that false statements must have adverse consequences for a plaintiff in order to be actionable under Chapter 93A)**.** The plaintiffs have not cited to one instance of a customer or prospective customer having been influenced to not use their services, or any decrease in sales or revenues as a result of a false statement made by the defendants. The formulaic recitation of injuries suffered and damages claimed in the FAC constitutes nothing more than a claim that "the defendant unlawfully harmed me."

Finally, courts generally hold that if the legal theory underlying the chapter 93A claim fails, then there is no basis for maintaining the chapter 93A claim. *See, e.g., Massachusetts Sch. of Law*, 142 F.3d at 42 ("where allegedly defamatory statements do not support a cause of action for defamation, they also do not support a cause of action under [Chapter] 93A"); *Zyla v. Wadsworth*, 360 F.3d 243, 249 (1st Cir. 2004) (affirming district court's holding that "ch. 93A claim failed because the claims upon which it was based -- breach of contract, tortious interference, and fraud -- had already been rejected."). Here, none of the conduct that the

30

plaintiffs claim is actionable under their chapter 93A claim states a claim under their other legal

theories, and their chapter 93A claim fails as a matter of law as well.

Under any of these causes of action, the plaintiffs' FAC fails to state a claim, whether

because the defendant is immune under the CDA, or because the plaintiffs' allegations are either

too speculative and conclusory, or are actually contradicted by the Exhibits on which they

purport to rely.

**D.** **THE PLAINTIFFS HAVE NOT PLED ANY FACTS, WHICH IF PROVEN, WOULD SUPPORT A CLAIM FOR TORTIOUS INTERFERENCE (COUNT IV).**

To properly plead a claim for intentional interference with advantageous relationships,

whether existing or prospective, a plaintiff must allege that:

> (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.

*Dear v. Devaney*, 83 Mass. App. Ct. 285, 294 (2013) (quoting *Blackstone v. Cashman*, 448

Mass. 255, 260 (2007); citing *Weber v. Community Teamwork, Inc.*, 434 Mass. 761, 781-782

(2001)). The loss of the relationships must be as a "direct result" of the intentional conduct by

the defendant. *Cavicchi v. Koski*, 67 Mass. App. Ct. 654, 657 (2006) (quoting *Kurker v. Hill*, 44

Mass. App. Ct. 184, 191 (1998)).

None of the six plaintiffs identify a single customer or potential customer, of which the

defendants were aware, with which a plaintiff had an existing advantageous relationship,

contractual or otherwise, that was disrupted. The plaintiffs' cause of action is merely a

"formulaic recitation of the elements," with a claim that "the defendants unlawfully harmed me."

*See Iqbal*, 556 U.S. at 678**.** *Compare, e.g.*, *Arbor Networks, Inc. v. Ronca*, 2012 U.S. Dist.

LEXIS 162583 (D. Mass. 2012) (denying motion to dismiss where plaintiff alleged specific facts

supporting each element of the cause of action). Consequently, the plaintiffs have failed to adequately state a claim for tortious interference with an contractual or advantageous business relationship.

### E.   PLAINTIFFS NEIGHBORS MOVING & STORAGE AND AMERICAN VAN LINES HAVE FAILED TO STATE A CLAIM FOR TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT (COUNT V).

Claims for infringement of a federally registered trademark are governed by § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), which states in relevant part:

> Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or to cause mistake, or to deceive;
> . . .
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1). Thus, to establish trademark infringement under the Lanham Act, a plaintiff must prove that: (1) the plaintiff owns and uses the disputed marks; (2) the defendant used similar or identical marks without permission in commerce; and (3) unauthorized use likely confused consumers, harming the plaintiff (e.g., lost sales). *Lyons v. Gillette*, 882 F. Supp. 2d 217 (D. Mass. 2012) (citing *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56 (1st Cir. 2008).

Only two plaintiffs have asserted a claim for federal trademark infringement, Neighbors Moving & Storage and American Van Lines. Both fail to state a claim as a matter of law.

### 1.   Plaintiff Neighbors Moving & Storage Has No Standing to Assert a Claim for Trademark Infringement as the First Amended Complaint Establishes that it Does Not Own the Mark "Neighbors Moving & Storage."

Plaintiff Neighbors Moving & Storage ("Neighbors") alleges that it possesses the rights to the trademark "Neighbors Moving & Storage," and that the defendant has unlawfully used this mark in commerce. FAC ¶¶ 91, 94.  Neighbors attach, as an exhibit to the FAC, a printout from the United States Patent and Trademark Office Trademark Electronic Search System ("TESS") which indicates that the word mark "Neighbors Moving & Storage" is owned by FJM Intellectual Property, LLC, not Neighbors Moving & Storage. *See* FAC, Exhibit J. Accordingly, the Neighbors has not pled and cannot establish the first element of a claim for trademark infringement under the Lanham Act, ownership of the mark. The claim fails as a matter of law.

2.      **The Facts Alleged Establish that the Use of the Terms "Neighbors Moving & Storage" and "American Van Lines" is Merely to Identify the Companies, and Not as Source Identifiers, and No Claim for Infringement is Stated.**

"Because the trademark law regulates the use of words, pictures, and other symbols, it can conflict with values protected by the First Amendment." *Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F.Supp. 267, 275 (S.D.NY. 1992). "Trademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view." *L.L. Bean*, 811 F.2d at 29. Here, the names and/or logos of Neighbors Moving & Storage and American Van Lines are used on the website to identify the businesses regarding which consumers are submitting reviews. Without identifying the companies being reviewed, there would be no utility in allowing consumer to post reviews. Because of the generic nature of the plaintiff names, and the common use of frequent name changes and non-distinctive and confusingly similar company names in the moving industry,[16] inclusion of company names and/or logos is necessary to the identification. Indeed, use of the plaintiff company names and/or

---

[16] *See* **Exhibit 4** at 16-21, explaining that moving companies, including plaintiffs, often change names and use confusingly similar names.

logos is designed to <u>prevent</u> customer confusion, as it is a way of allowing consumers to identify the correct company in an industry where many company names are confusingly similar.

The Lanham Act provides no relief to plaintiffs when "the defendants use plaintiff's mark not in a manner that would create confusion as to the source, but rather as part of a message whose meaning depends on reference to plaintiff's product." *Cintas Corporation v. Unite Here*, 601 F. Supp. 2d 571, 579 (S.D.N.Y. 2009), aff'd 355 F. App'x 508 (2d Cir. 2009) (per curiam) at 579 (quoting *United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*, 128 F.3d 86, 92-93 (2d Cir. 1997)). Allegations of a "trademark injury" are thus distinguished from injuries claimed to result from criticism of a particular company or product. As the First Circuit has noted, a "[t]rademark injury arises from an improper association between the mark and products or services marketed by others," in contrast to injury that may result as a result of "critical commentary." *Universal Communications Sys.*, 478 F.3d at 423-424 (citing *L.L. Bean*, 822 F.3d at 31). If the true nature of the injury alleged is harm to a company's reputation due to "critical commentary, it falls outside trademark law, whether the criticism is warranted or unwarranted." *Id.* at 424. Furthermore, while, as in *Universal Communications*, the use of the mark by the defendant could be characterized as "commercial" because MyMovingReviews.com is alleged to be a commercial, profit-driven enterprise, the use of the mark as an identifier in this context is falls outside of the "commercial use" contemplated by trademark remedies. *Id.* (holding that although the defendant website might "profit by encouraging others to talk about [the plaintiff] under the [the plaintiff's trademarked] name. . . neither that speech nor Lycos's providing a forum for that speech is the type of use that is subject to trademark liability.")

    **3.**      **The Facts, as Pled, Do Not as a Matter of Law, Support any Inference that there is a Likelihood of Consumer Confusion from the use of Plaintiffs' Company Names on MyMovingReviews.com.**

984810.1

Even if Neighbors Moving & Storage and American Van Lines had alleged a use of their claimed marks that could state a claim for infringement, on the facts pled, there is no likelihood of consumer confusion as a matter of law. The plaintiffs allege that the defendant's action in using their claimed marks on MyMovingReviews.com is "likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of the Defendants' goods and services with Plaintiffs' Marks; or as to the origin, sponsorship, or approval of the Site's services, and commercial activities by the plaintiffs under the Marks." FAC ¶ 98. However, the plaintiffs' central complaint about the use of their company names on the website centers on the fact that negative consumer reviews are publicly posted about their businesses. Thus, as a matter of law, the Court cannot make a reasonable inference based upon the facts alleged that consumer confusion is likely due to the defendant's use of the plaintiffs' claimed marks.

"[I]n the false designation of origin context and unfair competition context [of a Lanham Act claim], '[t]he public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement.'" *Ascentive*, 842 F.Supp. 2d at 460 (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 109 (2d Cir. 2010) (quoting *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979)) (emphasis in original). "To establish likely confusion, a plaintiff alleging trademark infringement must establish more than a theoretical possibility of confusion. Rather, the allegedly infringing conduct must create a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *TriMark USA, Inc. v. Performance Food Group Co., LLC*, 667 F. Supp. 2d 155 (D. Mass. 2009). Here, as a matter of law, where the context of the use of the plaintiff company names is a consumer review website, and the content of which they complain is critical of their companies, there is no likelihood of confusion as a matter of law, as

35

there can be no plausible inference that a consumer would likely be misled into believing that the plaintiff companies were affiliated with or endorsed MyMovingReviews.com in the absence of some affirmative statement to the contrary.[17] *See, e.g.*, *Ascentive*, 842 F.Sup. at 460, 462 (citing a series of cases concluding that there is no likelihood of consumer confusion where company marks are used on review or complaint websites: *Taubman Co. v. Webfeats*, 319 F.3d 770, 777-78 (6th Cir. 2003); *Taylor Building Corp. of Am. v. Benfield*, 507 F. Supp. 2d 832, 847 (S.D. Ohio 2007); *Bally Total Fitness Holding Corp. v. Faber*, 29 F. Supp. 2d 1161, 1163-64 (C.D. Cal. 1998).

If a company that was reviewed on a site such as MyMovingReview.com could prevent the site from using its trademark by suing the site for trademark infringement, it could thereby insulate itself from public criticism and control all public discussion of the company and its services. Other federal courts have condemned such uses of the Lanham Act, and this Court should not countenance it either. *See Lamparello v. Falwell*, 420 F.3d 309, 317-18 (4th Cir. 2005) ("a markholder cannot 'shield itself from criticism by forbidding the use of its name in commentaries critical of its conduct'") (quoting *CPC Int'l, Inc. v. Skippy, Inc.*, 214 F.3d 456 (4th Cir. 2000) and citing *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 33 (1st Cir. 1987)). It is not solely the defendants' expressive conduct which is implicated, but that of the consumer public, who may wish to submit reviews of the plaintiff companies. If they are not permitted to identify the companies being reviewed, their speech is effectively silenced.

**F.      PLAINTIFF FATHER AND SON FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT BECAUSE IT HAS NOT ALLEGED THAT ITS COPYRIGHT IS FEDERALLY REGISTERED.**

---

[17] For example, where a company is a Registered Mover with MyMovingREviews.com, as in the case of Father and Son Moving and Storage. *See* FAC Exhibit K.

Pursuant to 17 U.S.C. § 411(a), "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." Plaintiff Father and Son alleges that it holds a copyright in the language and literary work used on its website, www.fandsmoving.com. FAC ¶ 104. However, it does not plead that it has registered the copyright to this work, and a search of the United States Copyright Office Public Catalogue, available at http://www.copyright.gov/records/ reveals that no such work has been registered. *See* **Exhibit 9** Because the one plaintiff asserting a claim of copyright infringement against the defendant has not alleged that it registered its work with the United States Copyright Office, the claim fails as a matter of law, and must be dismissed. *See Latin Am. Music Co. v. Media Power Group, Inc.*, 705 F.3d 34, 42-43 (1st Cir. 2013) ("Registration of a copyright is a precondition to filing a copyright infringement claim. Although the registration requirement "does not implicate the subject-matter jurisdiction of federal courts, proof of registration of the allegedly infringed work remains an  element of a cause of action for copyright infringement") (internal quotation marks, citations, and alteration omitted).

## G.   THE PLAINTIFFS' CONCLUSORY CONSPIRACY CLAIMS DO NOT CURE THE DEFECTS IN PLEADING THE VARIOUS CAUSES OF ACTION.

The plaintiffs claim, that, as to each theory of liability, all defendants may be held liable under a theory of civil conspiracy. These baseless allegations are yet another example of the plaintiffs pleading the elements of a cause of action, without pleading any facts to support them. Their theory that MyMovingReviews.com, a site that hosts a nationwide directory of moving companies and a consumer forum that allows reviews from all over the United States, was created over three years ago, and is still operating today, is an elaborate front for a false advertising scheme designed to direct customers to Xpress Movers is a pure fantasy. Even

37

assuming that a state common law claim of civil conspiracy could be applied to the causes pled,

the plaintiffs have not adequately pled facts that would support a civil conspiracy claim on any

theory. Under Massachusetts law, a claim for civil conspiracy requires that the plaintiff plead and

prove that each defendant (a) committed a tortious act in concert with the other or pursuant to a

common design with him; (b) knew that the other's conduct constituted a breach of duty and

gave substantial assistance or encouragement to the other so to conduct himself, or (c) gave

substantial assistance to the other in accomplishing a tortious result and his own conduct,

separately considered, constitutes a breach of duty to the third person. *Heinrich ex rel. Heinrich*

*v. Sweet*, 49 F. Supp. 2d 27, 44 (D. Mass. 1999) (quoting Restatement (Second) Torts, § 876).

> The doctrine appears to be reserved for application to facts which manifest a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result. Two key requirements of the tort for purposes of the instant motions are (a) that the defendant be aware of and agree with the allegedly tortious conduct of its co-defendants, and (b) that the defendant engage in some tortious conduct itself in furtherance of the common plan.

*Id.* (quoting *Kurker v. Hill*, 44 Mass. App. Ct. 184, 188-89 (1998)).

The plaintiffs have alleged nothing more than that there is common ownership and

management of Advanced Interactive, Xpress Movers, and World Media Group, LLC, that the

individual defendants, Panayotov and Andreev, share a residential address and work together to

operate the website, ¶¶ 12-16 and that, "on information and belief," the defendants conspired

together. The plaintiffs make a blanket allegation that "[w]henever in this Complaint reference is

made to any act of Defendants Andreev or Panayotov (each an "individual Defendant"), that

allegation shall be deemed to mean that said Individual Defendant committed, conspired to

commit, and/or aided and abetted the acts on behalf of each Defendant." FAC ¶ 40. Even under

the pre-*Twombly* standard governing motions to dismiss, the allegations of conspiracy are

woefully inadequate. The allegations are no more adequate than those described in the case of *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir. 1977), where the First Circuit upheld the dismissal of a number of defendants accused of civil conspiracy for failure to state a claim where the plaintiffs had failed to allege as to many of them, what their role was in the alleged conspiracy. Moreover, the court indicated that it would have been improper to have denied the motion to dismiss in order to allow the plaintiffs to take discovery in order to flesh out their allegations, stating "[w]e agree that plaintiff is entitled to the fullest opportunity to adduce evidence in support of her claim. But she is not entitled to a trial, or even to discovery, merely to find out whether or not there may be a factual basis for a claim which she has not made." *Id.* n.2 (quoing *Cohen v. Illinois Inst. of Technology,* 524 F.2d 818, 827 (7th Cir. 1975) (Stevens, J.), *cert. denied,* 425 U.S. 943 (1976)). "It has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts." *Slotnick v. Staviskey*, 560 F. 2d 31 (1st Cir. 1977)**.**

The plaintiffs make not even a token effort to state particular facts that would support an inference that, as to any claim, defendant Panayotov personally participated in wrongful conduct, knew of any allegedly tortious conduct of any other defendant, or acted in furtherance of it.

Furthermore, as the underlying causes of action all fail to state any actionable claims, the civil conspiracy theories of liability on which they are based fail as a matter of law as well.

### III.    CONCLUSION

Wherefore, defendant Martin Panayotov respectfully requests that the plaintiffs' First Amended Complaint be dismissed with prejudice, and that the Court award its costs and fees, and grant such other and further relief as is just and equitable.

984810.1

Respectfully submitted,

Defendant,
Martin Panayotov
By his counsel,

/s/ Kara Thorvaldsen
George C. Rockas BBO# 544009
Kara Thorvaldsen BBO# 660723
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
260 Franklin Street
Boston, MA 02110
(617) 422-5300

## Certificate Of Service

I, Kara Thorvaldsen, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  I am not aware of any party who is a non registered participant, and therefore electronic filing is the sole means of service of this document.

/s/ Kara Thorvaldsen

40