UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-12262-GAO

MOVING AND STORAGE, INC., d/b/a Neighbors Moving and Storage,
MBM MOVING SYSTEMS, LLC, COLONIAL VAN LINES, INC.,
FATHER & SON MOVING AND STORAGE, AMERICAN VAN LINES, INC.,
and NATIONWIDE RELOCATION SERVICES, INC.,
Plaintiffs,

v.

MARTIN PANAYOTOV, STOIL ANDREEV, XPRESS MOVERS, LLC,
ADVANCED INTERACTIVE, LLC, and WORLD MEDIA GROUP, LLC,
Defendants.

OPINION AND ORDER
March 12, 2014

O'TOOLE, D.J.

This case arises out of the defendants' operation of the moving company review website MyMovingReviews.com. The individual defendants, Martin Panayotov and Stoil Andreev, are officers or owners of the corporate defendants, Xpress Movers, LLC, Advanced Interactive, LLC, and World Media Group, LLC. The plaintiffs, all corporations providing moving services, allege that the defendants deleted positive customer reviews of the plaintiffs and deleted negative customer reviews of Xpress Movers in order to gain market share, all the while maintaining that the website was neutral in its operation. The plaintiffs assert various tort and statutory claims arising from the alleged conduct, and they also claim that the defendants committed copyright and trademark infringement by using content and logo designs taken from the plaintiffs' websites on MyMovingReviews.com without permission.

Defendant Panayotov moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing primarily that he is immune from suit under the

Communications Decency Act ("CDA"), 47 U.S.C. § 230. The remaining defendants have also moved to dismiss, incorporating by reference Mr. Panayotov's motion and memorandum in support.

## I. Legal Standard

In evaluating a motion to dismiss, the Court must take "all the factual allegations in the complaint as true." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). However, "formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court need not "accept as a true a legal conclusion couched as a factual allegation." Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). The Court may "begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 664.

## II. Discussion

### A. Communications Decency Act

Defendant Panayotov contends that Counts I through IV[1] of the Amended Complaint are barred by the Communications Decency Act ("CDA"). Section 230(c)(1) of the CDA states, in relevant part:

> (1) Treatment of publisher or speaker
> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

---

[1] For false advertising and unfair competition, violation of M.G.L. Chapter 93A, and tortious interference.

2

Under the CDA, a defendant:

> is immunized from a state law claim if: (1) [the defendant] is a "provider or user of an interactive computer service"; (2) the claim is based on "information provided by another information content provider"; and (3) the claim would treat [the defendant] "as the publisher or speaker" of that information.

Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007).

There is no dispute that the defendants provide an "interactive computer service" via the MyMovingReviews.com website. See id. at 419 ("[W]eb site operators . . . are providers of interactive computer services within the meaning of Section 230.").

As to the second element, the plaintiffs contend that their claims are not based on information provided by "*another* information content provider," which in this case would be reviews by third-party customers. I agree. The plaintiffs' claims do not arise from the content of the reviews, whether they be disparaging, laudatory, or neither, but instead, the defendants' alleged ill-intentioned deletion of positive reviews of the plaintiffs' moving companies and deletion of negative reviews of their own company, coupled with various representations – that the website offers "accurate" data, that it is "serious about reviews quality," and that readers "see the most accurate and up to date rating information to base your decision on." The manner in which the information is presented, or withheld, is the conduct at issue, as well as the allegedly misleading ratings which result from such alleged manipulations. Such conduct provides substantial basis to find that the defendants were developers of the alleged misinformation.[2] Cf. id. at 420 (holding that website operator was not responsible for the creation or development of the alleged misinformation where the plaintiffs alleged only that the defendant "may have made it marginally easier for others to develop and disseminate misinformation").

---

[2] The Amended Complaint also alleges that the defendants posted "fictitious negative reviews" concerning the plaintiffs' companies. (Am. Compl. at ¶ 81.) Any claims based on such content would be based on information provided by the defendants and therefore would not fall under CDA immunity.

3

Likewise, the plaintiffs do not seek to treat the defendants as the publisher or speaker of the third-party reviews. Rather, the plaintiffs treat the third-party customers as the publishers or speakers and bring "causes of action based not on [the defendants'] publishing conduct but on [their] representations regarding such conduct, [which] would not be immunized under [the CDA]." Levitt v. Yelp! Inc., 2011 WL 5079526, at *9 (N.D. Cal. 2011).

As the three elements giving rise to immunity under Section 230(c)(1) have not been satisfied, the defendants are not immune from suit under that subsection of the CDA.

With regards to Mr. Panayotov's contention that the website merely filtered out inaccurate or otherwise suspect material, including reviews not submitted by real customers, the applicable provision of the CDA is Section 230(c)(2), which states:

> (2) Civil liability
> (A) No provider or user of an interactive computer service shall be held liable on account of—
> any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected.

47 U.S.C. § 230(c)(2). This subsection requires a showing of good faith. As the plaintiffs have sufficiently alleged bad faith, the issue cannot be appropriately decided at this stage. It is better resolved on a developed factual record.

For these reasons, the CDA does not mandate dismissal of any of the claims at this time.

### B. False Advertising and Unfair Competition; Chapter 93A (Counts I, II, III)

The plaintiffs bring claims for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and state common law, as well as a claim for violation of M.G.L. Chapter 93A. These claims arise from the allegations that the defendants made various misrepresentations on the website MyMovingReviews.com, including the allegedly false claim

4

that it was accredited by the Better Business Bureau and the alleged misrepresentations about the accuracy and reliability of the customer reviews. Taking all factual allegations in the Amended Complaint as true, I conclude that these claims are adequately pled.

### C. Tortious Interference (Count IV)

To prevail on a claim for tortious interference with business relationships under Massachusetts law, a plaintiff must prove the following:

> (1) a business relationship or contemplated contract of economic benefit;
> (2) the defendant's knowledge of such relationship;
> (3) the defendant's interference with the relationship through improper motive or means; and,
> (4) the plaintiff's loss of advantage as a direct result of the defendant's conduct.

Singh v. Blue Cross/Blue Shield of Mass., Inc., 308 F.3d 25, 47 (1st Cir. 2002) (citations omitted). The plaintiffs here allege that their "customers and prospective customers are misled into believing that Plaintiffs' services are poorly rated and reviewed on Defendants' website, through Defendants' conduct of removing negative reviews concerning Plaintiffs and posting fictitious negative reviews," and also "misled into believing that Defendants' services are positively rated and reviewed due to Defendants' conduct in removing negative reviews posted on MyMovingReviews.com, and that Defendants' business [is] accredited by the BBB." (Am. Compl. at ¶¶ 81, 82.)

The plaintiffs have failed to allege with specificity any "business relationship or contemplated contract of economic benefit." They rely on Guest-Tek Interactive Entm't, Inc. v. Pullen, 731 F. Supp. 2d 80, 87 (D. Mass. 2010), for the proposition that it is sufficient to allege generally that business relations with prospective customers have been affected. But the holding in Guest-Tek is not so expansive. The court there noted that it was appropriate to draw the reasonable inference that the party being sued had knowledge of the potential business

relationships in light of other circumstances and factual allegations, e.g., the nature of the business and the defendant's alleged use of the plaintiff's contact list. Id. at 87-88.

No such circumstances exist here, especially in this type of business where the class of potential customers is not at all defined but could include any individual who may need moving services in the future. As noted in a similar case in this district,

> The plaintiff's definition of "advantageous relations" for these purposes is too expansive. It appears that the plaintiff's theory is that the existence of a potential market for a company's product is sufficient to create a prospective advantageous relationship with each potential customer in that market. Massachusetts does not interpret this tort to reach so far. The plaintiff has not identified any case in which a court applying Massachusetts law has allowed a claim for intentional interference with advantageous business relations where the business relationship said to have been interfered with was as inchoate as alleged here.

Katin v. Nat'l Real Estate Info. Servs., Inc., 2009 WL 929554, at *9 (D. Mass. Mar. 31, 2009) (quoting Laser Lasbs, Inc. v. ETL Testing Labs., Inc., 29 F. Supp. 2d 21, 23-24 (D. Mass. 1998)). The tortious interference claim is therefore dismissed.

### D. Trademark Infringement (Count V)

Plaintiffs Moving and Storage (d/b/a Neighbors Moving and Storage) and American Van Lines allege that the defendants infringed their trademarks "Neighbors Moving & Storage" and "American Van Lines" by using these marks without permission on their website and in metatags.

"To establish trademark infringement under the Lanham Act, a plaintiff must prove that: (1) it owns and uses the disputed marks; (2) the defendant(s) used similar or identical marks without permission; and (3) that unauthorized use likely confused consumers, harming the plaintiff." Shelby v. Factory Five Racing, Inc., 684 F. Supp. 2d 205, 215 (D. Mass. 2010) (citing Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 60 (1st Cir. 2008)). The First Circuit has "interpreted 'likely confusion' to mean 'more than the theoretical possibility of

confusion.'" Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008) (quoting Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996)). "In other words, the allegedly infringing conduct must create a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." Id. (internal quotation marks and citation omitted).

The plaintiffs' allegations fail to support any inference that confusion by consumers is likely. The defendants' website, MyMovingReviews.com, is very clearly a review website, and it is implausible that any reasonably prudent purchaser exercising ordinary care would be confused by the use of the plaintiffs' marks. The plaintiffs rely on the "initial interest confusion" doctrine, which "refers to a type of pre-sale confusion that has not been fully explored or addressed by the First Circuit." Hearts on Fire Co., LLC v. Blue Nile, Inc., 603 F. Supp. 2d 274, 283 (D. Mass. 2009). The plaintiffs assert that the defendants' use of metatags to divert consumers who search for the plaintiffs' companies online to the defendants' website amounts to trademark infringement under this doctrine. However, even if this doctrine were recognized in this Circuit, which it has not been, "[m]ere diversion, without any hint of confusion, is not enough." Id. at 286.

The plaintiffs claim that they specifically made allegations of consumer confusion at ¶¶ 4, 26, 32, 33[3], and 99 of the Amended Complaint. However, these are merely legal conclusions couched as factual allegations, and even if they were taken as true, they only support the inference that consumers are misled into believing allegedly inaccurate ratings, not that

---

[3] Here, the plaintiffs allege that the "unnecessary posting of Plaintiffs' trademarks have confused consumers about the nature of Plaintiff's [sic] services." But as the First Circuit noted in Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc., 704 F.3d 44, 52 (1st Cir. 2013), "a trademark holder has no right to police 'unnecessary' use of its mark. Whether necessary or not, a defendant's use of a mark must be *confusing* in the relevant statutory sense for a plaintiff to raise a viable infringement claim."

consumers were confused in the relevant sense, i.e., that they were confused about the source of the service or about endorsement or affiliation. See Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc., 704 F.3d 44, 49 (1st Cir. 2013). This claim is dismissed.

E.     Copyright Infringement (Count VI)

Plaintiff Father & Son Moving and Storage asserts that the defendants took copyrighted content from Father & Son's website (www.fandsmoving.com) without permission and published it on their own website, in violation of Father & Son's rights under the U.S. Copyright Act. Father & Son alleges that it "holds a copyright in the language and literary work used on its website" and that "the following language . . . appears on the Defendants' Site":

> Father & Son means QUALITY LOW COST MOVING! We are a family-owned business, dedicated to providing professional and personal service. Father & Son specialized in local, statewide, long distance moving, Office relocation, truck rentals, small moves, self services movers, and more. All moves are performed by our quality trained professionals, who handle your moving needs from start to finish. Address: 12435 E 42nd Avenue Unit 50 Denver, CO 80239 Phone: (303) 322-6562.

(Am. Compl. at ¶¶ 104, 106 (dkt. no. 37).)

"Registration of a copyright is a precondition to filing a copyright infringement claim." Latin Am. Music Co. Inc. v. Media Power Grp., Inc., 705 F.3d 34, 42 (1st Cir. 2013) (citing 17 U.S.C. § 411)). Here, Father & Son alleges that the Copyright Office received its registration application on May 21, 2013, three days before the filing of the Amended Complaint. Further, according to a Notice (dkt. no. 70) filed by the plaintiffs on February 20, 2014, the Copyright Office issued a certificate of registration, attached to the Notice as Exhibit A, effective May 21, 2013, but the plaintiffs did not receive the certificate until several months thereafter. Under these circumstances, the registration requirement has been satisfied, and the claim will not be dismissed for the reason asserted by the defendants.

8

### III. Conclusion

For the foregoing reasons, defendant Panayotov's Motion to Dismiss (dkt. no. 41) is GRANTED in part and DENIED in part. Counts IV and V of the Amended Complaint are DISMISSED. The other counts remain.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge